**Nelson L. PHILLIPS, Plaintiff-Appellant,**

v.

**City and County of San Francisco: ADULT PROBATION DEPARTMENT OF THE CITY AND COUNTY OF SAN FRANCISCO, et al., Defendants-Appellees.**

**No. 72-1074.**

United States Court of Appeals, Ninth Circuit.

Jan. 29, 1974.

---

Stuart Weinberg, of Levy & Van Bourg, Paul N. Halvonik, Charles C. Marson, of American Civil Liberties Union, Jerome B. Falk, Jr. (argued), San Francisco, Cal., for plaintiff-appellant.

Thomas M. O'Connor, City Atty., Raymond D. Williamson, Jr., George E.

Krueger, Deputy City Attys. (argued), San Francisco, Cal., for defendants-appellees.

Before DUNIWAY and CHOY, Circuit Judges, and JAMESON,* District Judge.

JAMESON, District Judge:

This appeal is from a summary judgment of dismissal of an action under the Civil Rights Act, 42 U.S.C. §§ 1981, 1983, and 1985.[1]

### Statement of Facts

Appellant was a deputy probation officer in the Family Support Section of the Adult Probation Department of the City and County of San Francisco. His work involved divorce and child support problems among a clientele which was approximately 75% black, 10% Latin American or Spanish-speaking, and 15% Caucasian or Oriental. In September, 1970 he placed on the walls of his office a poster, approximately two feet by three feet in size, which contained the legend "Wanted by the F.B.I." Beneath this legend were drawings of H. Rap Brown, Angela Davis and Eldridge Cleaver, who at the time were fugitives sought by the Federal Bureau of Investigation for the offense of unlawful flight to avoid prosecution. Below these likenesses were three additional lines:

"*Faith, Beauty, Integrity*

REWARD

*Love-Peace-Happiness*"

Appellant stated that he placed the poster in his office as "a symbolic statement and protest" because he believed "that the individuals depicted in the poster * * * were not being depicted

---

*Honorable W. J. Jameson, United States Senior District Judge for the District of Montana, sitting by designation.

1. Appellant sought injunctive and compensatory relief. Following denial of an application for a preliminary injunction, appellees filed a motion to dismiss. The court decided

to consider matters outside the pleadings, treated the motion as one for summary judgment under Rule 12(b), and granted the motion on the basis of the pleadings and affidavits filed by both parties. The parties agree that the facts are essentially undisputed.

fairly by the mass media and public opinion".

Appellant's co-workers brought the poster to the attention of appellee Jenkins, Chief Adult Probation Officer, who, upon observation, directed appellant to remove the poster within two days or face suspension. Jenkins stated that in his opinion "the poster was offensive to law enforcement, was unprofessional, had no place in a public building, was disrespectful and in poor taste". Several employees stated that if appellant was permitted to keep the poster on his wall, they would, as a form of protest to appellant's poster, place upon their walls posters offensive to various other ethnic or religious groups.[2] Jenkins "had no doubts that if [he] did not take immediate action, these other posters would have gone up on office walls and the result on work production and morale would have been devastating at a time when tremendously heavy case loads impose a severe burden upon my staff."

Appellant disobeyed Jenkins' order to remove the poster [3] and was suspended for a period of five days, the letter of suspension stating that it was "based on your refusal to remove from the wall of your office a poster sign that I deem to be unprofessional and in poor taste".

Appellant sought administrative review of his suspension pursuant to the rules of the Civil Service Commission of the City and County of San Francisco. The matter was heard by an Employee Grievance Appeals Committee, which found that appellees had violated appellant's constitutional right of free expression. The Committee's decision was advisory only and was rejected by Jenkins. This action followed, appellant contending in the district court, as he does on this appeal, that appellees' actions were in violation of his First, Fifth and Fourteenth Amendment rights.

### Opinion of District Court

The district court was of the opinion that appellant had failed to state "a cause of action under the Civil Rights Act", and that even if a cause of action had been stated, the affidavits filed on behalf of the appellees [4] "show that the poster * * * caused a substantial and material interference with the working of the Probation Department", and that the "conclusory statements" in appellant's complaint and affidavit that "no disruption was caused by the poster was not sufficient to put the matter in issue". Indulging "every legitimate inference to be drawn" from appellant's evidence, the court concluded that "there is no evidence of sufficient substance to support a verdict" for the appellant and that the appellees "are entitled to summary judgment".

2. Jenkins stated in his affidavit that the employees had informed him that "they would be entitled to post, and would or probably would post, posters dealing with such subjects as a Nazi officer with phraseology insulting to Jewish persons, a white-sheeted Ku Klux Klan member with insulting language directed toward Black People, a picture favorably depicting the person who shot Martin Luther King."

3. Appellant gave as his reasons for failing to comply with the order that (1) there were no regulations regarding the decoration of offices; (2) "other employees within the Department have decorations of a political or social nature on their walls and are not subjected to discipline"; and (3) he "dealt with many minority people, who upon observing the poster identified strongly with [him], became more relaxed, less guarded and more willing to talk and listen to him."

4. Two affidavits of Jenkins and affidavits of four other employees of the Probation Department were filed on behalf of the appellees. The clerk typist and receptionist in the Family Unit stated that the poster was disruptive to her, she was unable to concentrate on her work, and she would not do any more typing for appellant. Two others stated that the poster made them "extremely upset" and "extremely angry", one of them (a senior probation officer) stating further that it was a "detrimental morale factor". Another senior probation officer stated that as a former police officer the poster personally offended him and that unless it was removed "a problem would arise within the department since other former police officers were also offended by the poster".

### Contentions on Appeal

Appellant contends that (1) the exercise of his right of free expression may not be infringed by his superiors in the absence of a clearly defined policy which describes the circumstances in which such expression will not be allowed; and (2) his poster was constitutionally protected expression, and no showing of a countervailing and compelling state interest which would justify suppression has been made by appellees.

### Absence of Formal Regulations

■ Appellant first argues that his suspension was constitutionally impermissible since the Probation Department did not have "carefully delineated" regulations which "forbid the placing of posters on the walls of its employees' offices", and other employees "have decorations of a political or social nature on their walls and are not subjected to discipline".[5] We find no merit in this contention and agree with appellees that they had discretion to determine that appellant's office was an inappropriate place to display a poster expressing approval of persons who were then fugitives from justice.

■■ It is not essential that a public employer spell out in detail all conduct which is deemed improper and may result in disciplinary action.[6] It is "inherent in the employment relationship as a matter of common sense", Meehan, supra at 835, that a probation officer does not have the right to place on his walls a poster favorably depicting persons who are fugitives from justice. His supervisor could reasonably conclude that the poster was unprofessional, in poor taste, and inconsistent with the proper performance of appellant's duties as a probation officer.[7] The supervisor was acting within his discretion in directing appellant to remove the objectionable poster within two days or face suspension. The sanction of a five-day suspension was imposed only after appellant failed to comply with the warning and order.[8]

### Applicability of First Amendment

The district court found that the "main issue" was "whether the First Amendment is applicable * * * [where] a public employer seeks to regulate the manner in which a particular employee may express himself during work hours and on work premises". Appellant argues that his poster was constitutionally protected expression and that no compelling reason has been given to justify its suppression by appellees.

■ It is well settled that First Amendment rights of expression are not absolute, and that regulation as to time, place and manner of exercise is proper when reasonably related to a valid public interest. Cox v. Louisiana, 379 U.S. 536, 558, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965). While "[t]he theory that public employment which may be denied altogether may be subjected to any conditions, regardless of how unreasonable, has been uniformly rejected", Keyishian v. Board of Regents, 385 U.S. 589, 605–606, 87 S.Ct. 675, 685, 17 L.Ed.2d 629 (1967), "it cannot be gainsaid that the State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general." Pickering v. Board of Education, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968). The problem "is to arrive at a balance between the interests

---

5. There is no evidence that any of the "decorations" placed on the walls by other employees were objectionable or inappropriate for a probation department.

6. See Meehan v. Macy, 129 U.S.App.D.C. 217, 392 F.2d 822, 835 (1968) quoted with approval in Waters v. Peterson, infra at n. 9.

7. The probation department is in effect an arm of the Superior Court and engaged in law enforcement.

8. This case is factually distinguishable from those cases which have held that disciplinary sanctions may not be imposed for an employee's violation of a vague or uncertain statute or regulation.

of the [public employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public service it performs through its employees." *Id.*[9]

■ The governmental interest in maintaining a high level of service by assuring the efficiency of its employees in the performance of their tasks "comprehends the maintenance of discipline, the prevalence of harmony among co-workers, and the elimination of conduct which may reasonably be thought to have 'impeded' the proper performance" by a public employee of his duties.[10] Goldwasser v. Brown, 135 U.S.App.D.C. 222, 417 F.2d 1169, 1176 (1969), cert. denied, 397 U.S. 922, 90 S.Ct. 918, 25 L. Ed.2d 103 (1970). This governmental interest may, consistent with the First Amendment, require public employees "to suspend or refrain from certain activities * * * that are embraced within the constitutional rights of others, when such activities are reasonably deemed inconsistent with their public status and duties". *Meehan, supra* 392 F.2d at 832.

Appellant's major function as a probation officer was to deal with divorce and child support problems by emphasizing "the need for faithfully paying the amounts either ordered by the court or agreed by the parties". His supervisor could reasonably conclude, as he did, that it was inconsistent with appellant's

function as a probation officer to place on the walls of his office a poster favorably depicting persons who were then fugitives from justice. In addition, the supervisor reasonably concluded from the reaction of appellant's co-workers that the poster would impair the efficiency of the Department through dissension and disharmony among the employees.

At oral argument counsel for appellant relied heavily upon the recent decision of the District of Columbia Circuit in Waters v. Peterson, D.C.Cir., 495 F. .2d 91 (1973).[11] In that case employees were suspended for five days for demonstrating in a public cafeteria and during lunch hour against alleged racial discrimination by two white female supervisors in the employment practices of the Bureau of the Census. It was held that a sign carried by the employees was constitutionally protected expression and that their interest in free expression outweighed the asserted governmental interest in "a tranquil environment for government employees during their lunch hour". The court expressly distinguished *Goldwasser, supra,* decided by the same court, which involved classroom statements by a teacher during work hours, "with the court noting that an altogether different question would be presented by speech off-hours outside the classroom". In *Waters* the court noted also that unlike *Meehan, supra,* and *Goldwasser,* there had been "a suspension notwithstanding the lack of a

---

9. Appellant relied heavily on *Pickering* in the district court. In that case a public school teacher wrote a letter to a local newspaper criticizing the board of education and superintendent for their handling of a bond issue and allocation of funds. The Court found that the interest of the teacher in commenting on matters of public concern outweighed the interest of the State in promoting the efficiency of its school system. In distinguishing *Pickering* the district court properly noted the critical distinction between expressions outside work premises during off-duty hours and those carried on during work hours and on the work premises.

10. As the district court well said:
   "It is essential to the success of every business enterprise or the operations of government that a working atmosphere be created which is conducive to both the majority of the employees of the enterprise and to its clients. It is clear that one who is charged with establishing this atmosphere cannot be successful if each of his subordinates is free to express himself in any manner and in any place that he so pleases, within the course and scope of his employment."

11. One of the panel of three dissented and would have affirmed the summary judgment of dismissal on the opinion of the district court, 341 F.Supp. 441 (D.D.C.1972).

specific warning". Here appellant was given a specific warning and reasonable opportunity to remove the objectionable poster before any disciplinary action was taken.

We concude that in this case the governmental interest in promoting the efficiency of the public service outweighs appellant's asserted rights of expression "during work hours and on work premises", and that the district court properly granted summary judgment of dismissal.

Affirmed.