Cathleen CONNEALY, Plaintiff,

v.

James F. WALSH, Director of Juvenile Court Services, Sixteenth Judicial Circuit Court of Missouri, Defendant.

Civ. A. No. 20653–3.

United States District Court, W. D. Missouri, W. D.

April 19, 1976.

Roger Wall, Campbell, Erickson, Cottingham, Morgan & Gibson, Independence, Mo., for plaintiff.

Harry P. Thomson, Jr., Shugart, Thomson & Kilroy, Kansas City, Mo., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND FINAL JUDGMENT FOR DEFENDANT ON ALL COUNTS

WILLIAM H. BECKER, Chief Judge.

This is a civil rights action by a former employee of the Juvenile Court of the Sixteenth Judicial Circuit of Missouri (Jackson County) (hereinafter "Juvenile Court") under the Civil Rights Act of 1871, Section 1983, Title 42, United States Code. Plaintiff contends that her discharge for failure to remove a "McGovern" bumper sticker from her automobile, pursuant to Section XIII of the Juvenile Court Personnel Policies which prohibits employees of the Juvenile Court from involvement in "partisan political activities," violated her First and Fourteenth Amendment rights of freedom of speech and to procedural due process.[1] Plaintiff seeks declaratory ,and injunctive relief, reinstatement, back pay, and attorneys' fees.

On August 26, 1975, an order was entered narrowing the issues and establishing certain facts as undisputed pursuant to Rule 56(d) of the Federal Rules of Civil Procedure. At that time, the remaining issues to be tried were: (1) whether the bumper sticker prohibition promotes state interests which outweigh plaintiff's First Amendment rights; and (2) whether plaintiff possessed a "property" interest in her position, or was deprived of "liberty" by the manner of her discharge, which would entitle her to procedural due process rights not accorded her.

On March 5, 1976, a plenary evidentiary hearing was held. The parties have submitted proposed findings of fact and conclusions of law. At the Court's request, the parties have also submitted post-trial briefs on the issue of the state interest in preserving a nonpartisan judiciary.

Based upon the undisputed facts, the evidence presented at the hearing, and the briefs submitted by the parties, the following findings of fact and conclusions of law will be entered.

### I. *Findings of Fact.*

On June 30, 1969, plaintiff was employed as a social worker by the Juvenile Court.

---

1. In the complaint, plaintiff also contended that she was denied equal protection of the laws by virtue of alleged discriminatory application of the prohibition on bumper stickers. This contention was abandoned because it was not included in Pretrial Order No. 2 under contested legal issues. *See*: August 26, 1975, Order Denying Plaintiff's Motion For Summary Judgment and Order Narrowing the Issues. . .," footnote 1. Furthermore, the evidence is clear that the bumper sticker prohibition was applied even-handedly. See p. 150, *infra*.

Her first assignment as a deputy juvenile officer was supervision of children under six years of age who were available for adoption or who had been removed from their parents because of neglect. In March, 1970, plaintiff was assigned to a program called "Children in Need of Care" which was designed to make the community aware of the availability of the children plaintiff supervised. On February 1, 1972, plaintiff was transferred to the Drug Service Unit of the Juvenile Court and assigned to the "Youth in Need of Care" program where she worked until her discharge on October 18, 1972.

Plaintiff's duties in the Drug Service Unit consisted of acting as a probation officer for persons placed on probation for drug offenses by the Juvenile Court. The ethnic backgrounds of the probationers under plaintiff's supervision were varied. Part of plaintiff's duties consisted of holding weekly meetings or interviews with the probationers, their parents, and occasionally their acquaintances to discuss their problems. She was also available for counseling at any time for cases of emergency. At all times, plaintiff's job performance was satisfactory or better.

Usually, plaintiff went to her probationer's home, school or job for the weekly conference or interview and investigation. As part of her employment, plaintiff was required to provide an automobile at all times during her hours on duty for transportation to places where she interviewed or conferred with her probationers or made investigations, and to furnish proof of adequate automobile insurance coverage. Plaintiff did provide an automobile and did furnish the requisite proof of automobile insurance coverage. Plaintiff was entitled to park this automobile in the Juvenile Court parking lot. Several persons who were not employees of the Juvenile Court were also permitted to park in the same lot. Plaintiff was reimbursed by the Juvenile Court for use of her automobile in the course of her employment at the rate of ten cents per mile.

Defendant Walsh was at all times material the Director of Juvenile Court Services of the Jackson County Juvenile Court. In that capacity, defendant was charged with the administrative duties of hiring and discharging employees of the Juvenile Court.

On January 1, 1969, the Sixteenth Judicial Circuit Court en banc issued an order entitled "In the Matter of the Administrative Operation of the Court—Juvenile Court Personnel Policies." Section IX of the order, entitled "Separation from Employment," provided in pertinent part:

"B. Dismissal: Dismissal action shall be initiated by the Director, after notification to the Juvenile Judge.

"1. Reasons for Dismissal of any Employee:

"Reasons for dismissal shall include: Physical or mental disability . . . ; incompetence; insubordination; misconduct, such as a moral or criminal offense . . . ; or such other cause that reflects negatively on the work of the Juvenile Court.

"2. Notice

"Two weeks notice of dismissal and the reasons for such action shall be given to permanent employees in writing. Immediate removal from the Juvenile Court can be required by the Director for good cause. . . .

"No dismissal should take place without a personal discussion with the Director (or delegate) and the subject employee."

Section XIII, entitled "Political Involvement," provided:

"The Juvenile Court is nonpartisan. No employee of the court shall be involved in any way in partisan political activities. Active or indirect partisan political involvement could result in employment termination. Each employee is strongly encouraged to vote his political convictions at every election."

Section XIII is based on Article 5, Section 29(f) of the Missouri Constitution which has been consistently interpreted by the Six-

teenth Judicial Circuit Court to apply to all court employees.[2]

In May, 1972, Circuit Judge Robert A. Meyers of the Sixteenth Judicial Circuit Court, then in charge of the Juvenile Division of that Court, brought to defendant's attention several partisan political bumper stickers on automobiles parked in the Juvenile Court parking lot. Judge Meyers requested defendant to issue a memorandum to Juvenile Court employees concerning the bumper stickers. On May 22, 1972, defendant prepared and circulated a "Memorandum to All Staff," which provided in pertinent part:

"No staff member may be involved in any political activities of any sort. That includes bumper stickers. Participation will lead to immediate termination. We are precluded by law for such involvement. We encourage everyone to support their convictions by voting but they may not be involved in active political participation of any kind."

Also in May, 1972, plaintiff was in California during that state's presidential primary campaign. While in California, plaintiff obtained and placed on her car a "McGovern" bumper sticker. When she returned following her vacation, she was advised by defendant of the memorandum prohibiting bumper stickers and Judge Meyers' order. She was informed that her employment would be terminated if the bumper sticker was not removed. After the conversation, plaintiff agreed to, and on June 9, 1972, did, remove the bumper sticker.

Between June and October, 1972, plaintiff conferred with several legal aid attorneys and senior law students concerning the validity of the bumper sticker prohibition. She was advised that the prohibition was invalid and referred to an attorney who also advised her that the prohibition was illegal.

On October 13, 1972, plaintiff's counsel wrote defendant a letter in which he stated that he had been retained by plaintiff; that it was his opinion " . . . that the State law does not prohibit the expression of opinion by State employees"; and that he was advising plaintiff to replace the "McGovern" bumper sticker on her automobile. On October 16, 1972, defendant replied by letter stating that plaintiff was an employee of the Juvenile Division of the Sixteenth Judicial Circuit of Missouri to whom applies Article 5, Section 29, of the Missouri Constitution; that the Circuit Court en banc and the Judge of the Juvenile Court had indicated that they would not permit any engagement in partisan political activities; that plaintiff had been so advised; and that violation of the directives of the Circuit Court en banc and the Judge of the Juvenile Division would result in termination of employment.

Sometime prior to October 16, 1972, plaintiff placed a new "McGovern" bumper sticker on her automobile because, in her opinion, display of a "McGovern" bumper sticker did not constitute "partisan political activity." On Wednesday, October 18, 1972, plaintiff came to defendant's office and told defendant the bumper sticker had been replaced. At plaintiff's insistence, defendant went to the parking lot and observed the sticker. After requesting plaintiff to remove the sticker and warning her that she was subject to discharge for failure to remove it, and after plaintiff refused to remove the sticker, defendant informed plaintiff she would be discharged.

While in the parking lot, plaintiff mentioned that two other employees of the Juvenile Court Services had partisan bumper stickers on their automobiles. After being reminded of the bumper sticker prohibition by the defendant that day or the day after, both employees removed the stickers. On October 19, 1972, defendant issued an "Interoffice Memorandum" concerning "Involvement In Partisan Political Activity" which stated that persons who were not employees of Juvenile Court Services would not be permitted to use the Juvenile Court Services parking lot if their automobile had a partisan political bumper sticker attached to it.

2. See p. 153, *infra*.

On October 20, 1972, plaintiff's counsel wrote defendant a letter protesting plaintiff's discharge and requesting invocation of available appeal procedures at which plaintiff could be represented by counsel. On October 26, 1972, defendant confirmed by letter to plaintiff that she had been discharged effective October 18, 1972, with two weeks notice from that date with pay.

On November 7, 1972, defendant delivered to plaintiff's counsel a copy of the January 1, 1969, order of the Sixteenth Judicial Circuit which contained the Constitution of the Personnel Practices Committee of the Juvenile Court, and appeal procedures following decisions of the committee. Section XVI of the order provided:

"In the event that any disagreement occurring in the area of personnel practices cannot be settled through discussions with the employees (sic) immediate supervisor, it may be brought to the attention of the Personnel Practices Committee for resolution. Final appeal shall be rendered by the Director with a review by the Juvenile Judge."

However, plaintiff filed the complaint in this action on November 6, 1972. No administrative review or appeal proceedings were held or requested by plaintiff.

The foregoing facts are substantially uncontroverted. The two crucial factual issues which remain are, (A) the extent to which a partisan political bumper sticker would, or is likely to, impair the efficiency of a social worker employed by the Juvenile Court Services, and (B) the extent to which partisan political bumper stickers on automobiles parked in the parking lot of the Juvenile Court, or used for official business of the Juvenile Court, would, or is likely to, affect the interest of the state in the image and the efficiency of the Juvenile Court.

█ In addition the state interest in the challenged order may be supported by the history of the Missouri which is judicially noticeable.

### A.

Much of the testimony at the hearing concerned the issue whether a partisan political bumper sticker would impair the effectiveness of a social worker. The following facts were established.

First, the purpose of a social worker, in general, is to assist persons in trouble in solving their problems. In plaintiff's case, the persons in need of counseling were primarily juveniles who had a record of involvement with drugs.

Second, a social worker can be effective only if he or she can successfully establish a relationship of mutual trust and confidence with the person needing help. Successful counseling requires communication between the social worker and the troubled person. The social worker's efforts will be frustrated unless the lines of communication are initially established and maintained.

Third, an established principle in both the theory and practice of social work is that the social worker should as far as possible, avoid all things which might make establishment or maintenance of open lines of communication more difficult or impossible. There are a number of factors affecting the relationship of the social worker with the persons needing help that cannot be avoided wholly or in part. Among these are race, sex, physical characteristics and accent for examples. The social worker must either overcome the adverse effect of these unavoidable factors, or fail in securing the required trust and confidence of the clients who react adversely to these factors. There are many things which have a potentially adverse effect on establishment and maintenance of the relationship, which are avoidable, and which should be avoided. One of these is overt expression of partisan political views.

Both of the expert witnesses called by plaintiff testified that overt expressions of partisan political views should be avoided, although they disagreed about the effect of a partisan political bumper sticker. Elizabeth Norris, a professional social worker

and an assistant professor and coordinator of social work at Avila College, stated that she did not believe that a bumper sticker should be avoided. However, she recognized the potential inflammatory impact of a bumper sticker, and further testified that a social worker should not express political views in an interview unless it has relevance, thus recognizing the potential adverse impact of partisan expressions on the interviews.

Dorothy H. Johnson, Director of the Jackson County Department of Health and Welfare and a professional social worker, testified that a partisan bumper sticker could affect the relationship depending on the person and the nature of the bumper sticker.

Defendant Walsh, who has a masters degree in social work and twenty years experience in the field, testified that a bumper sticker expressing political views not held by the drug probationer or his family, could have an adverse effect on the social worker's relationship with both.

Finally, plaintiff herself testified that under some circumstances, a bumper sticker could make communication more difficult. For instance, plaintiff testified that a Ku Klux Klan bumper sticker would present a factor which would have to be overcome by the social worker in some cases.

 In sum, the evidence shows that although the effect of a partisan political bumper sticker cannot be generalized, under some circumstances depending on the nature of the bumper sticker and the person receiving the counseling, a partisan political bumper sticker could have an adverse impact on the efficiency of the social worker.

### B.

The second state interest asserted in support of the bumper sticker prohibition is the interest in promoting an independent judicial branch free from the appearance and the fact influence of partisan politics. The nature and scope of this state interest can best be illustrated by review of the State of Missouri's long recognition that certain governmental functions can be properly performed and best performed only when free from the image and the fact of influence of partisan politics.

The first efforts to withdraw governmental functions from partisan politics took the form of requiring bipartisan composition of the board or commission charged with a particular governmental responsibility. In 1909, the General Assembly of Missouri required that no more than five of the nine constitutionally created curators of the University of Missouri should belong to any one political party.[3] In 1928, the voters of Missouri approved a constitutional amendment which provided that not more than one half of the members of the Missouri Highway Commission shall be of the same party, and that "[t]he selection and removal of all employees shall be without regard to political affiliation."[4] In 1946, the voters of Missouri by initiative constituted the Missouri Conservation Commission as a bipartisan body by constitutional amendment.[5] Finally, in 1945, the State Board of Education was made a bipartisan body.[6] Other instances of the same requirement exist in the Boards of Election and of Police Commissioners in the large metropolitan areas of the state and in other administrative and executive agencies.

It is in light of this prior history of protection of governmental functions from the influence of partisan politics that the enactment of the Missouri nonpartisan court plan adopted by constitutional amendment in 1940 must be viewed. Prior to 1940, openly corrupt political organizations exercised pervasive control of the personnel of the

3. 1909 Laws of Missouri 885, Section 11098 R.S.Mo. (1909). Currently Section 172.030, V.A.M.S.

4. Article 4, Section 29, of the Missouri Constitution of 1945. *See also*: Section 226.090, V.A.M.S.

5. Article 4, Section 40(a), of the Missouri Constitution of 1945.

6. Article 9, Section 2(a), of Missouri Constitution of 1945.

state courts by political control of elected judges and court appointed officers and employees. Not only was the quality of the administration of justice adversely affected, but the public's confidence in the integrity of the state judicial system was seriously eroded as reflected by the wide margins by which the nonpartisan court plan, placed on the ballot by initiative petitions, was enacted. *See generally*: Braithwaite, "Removal and Retirement of Judges in Missouri," 1968 Washington University Law Quarterly" 378, 412–415; Bundschu, "The Missouri Non-Partisan Court Plan—Selection and Tenure of Judges," 16 University of Kansas City Law Review 55, 60–63 (1948); Hall, "The Missouri Nonpartisan Court Plan: A Quarter Century Review," 33 University of Missouri at Kansas City Law Review 163, 164–166 (1965); Hyde, "Merit Selection–The Missouri Experience," Pamphlet of the American Judicature Society, No. 179.

Two of the slogans that expressed the goals of the citizens' committees that successfully advocated adoption of the Constitutional amendment were, "Take Politics Out of The Courts," and "Take The Courts Out of Politics."

The nonpartisan court plan, so adopted, is found in Article 5, Section 29, of the Missouri Constitution. It provides for nomination of judges of the Missouri Supreme Court, courts of appeals, circuit and probate courts of the city of St. Louis and Jackson County, and other adopting circuits by nonpartisan commissions. From the list of nominees submitted by the nonpartisan commissions, the Governor of the state must appoint one. No one may file and contest the retention of the nominee at an election. The nominee periodically runs against his record on a nonpartisan ballot submitting to the electorate the question: "Shall Judge ___ be retained in office."[7] Article 5, Section 29(f), provides:

"No judge of any court of record in this state, appointed to or retained in office in the manner prescribed in sections 29(a)– (g), shall directly or indirectly make any contribution to or hold any office in a political party or organization, or take part in any political campaign."

The prohibition against participation in partisan political activity embodied in Section 29(f) reflects a considered judgment by the people of the State of Missouri that the integrity of the judicial system cannot be maintained unless it is free from the actual or apparent influence of politics. In Missouri, this judgment is based upon a compelling state interest proven by experience and logic.

A crucial issue is the extent to which this state interest in a nonpartisan judiciary is promoted by prohibiting employees of the Juvenile Court Services from engaging in partisan political activities including the display of partisan political bumper stickers on automobiles used at state expense for official business of the Juvenile Court and parked in the official Juvenile Court parking lot. The Honorable Paul E. Vardeman, Presiding Judge of the Sixteenth Judicial Circuit of Missouri, testified that the prohibition against partisan political activities in Article 5, Section 29(f) has been consistently construed by the Sixteenth Judicial Circuit Court en banc to apply to employees of the court as well as to judges. The activities of court employees are considered to be "indirect" activities of the judges. He further testified that in his opinion, the political activities of court employees might be attributed to the judges of the court.

Defendant Walsh testified that the Jackson County Courthouse adjacent to the Juvenile Court parking lot was the central location for juvenile hearings which are attended by juveniles and interested adults; and that in his opinion partisan political bumper stickers on automobiles in the parking lot would have an adverse effect on the Juvenile Court, citing as examples bumper stickers favoring candidates of such controversial political groups as the American Nazi Party and the American Independent

7. The Missouri Nonpartisan Court Plan has served as a model for court plans throughout the United States. See Braithwaite, *supra*, at 391 n. 42.

Party, or groups who advocated liberalization of the drug laws.

From all the foregoing evidence and independently from judicially noticeable experience, it is factually concluded that display of a partisan political bumper sticker on an automobile used for official business of the Juvenile Court Services and parked in the parking lot of the Juvenile Court could create a public impression of, and evidence of the fact of, politically partisan activities by the judges of the Sixteenth Judicial Circuit Court, and of other officers thereof, which is inconsistent with the longstanding policy of nonpartisanship in the courts particularly, and in other branches of government in the State of Missouri.

## II. Conclusions of Law.

As set forth above, the issues remaining in this action are, (1) whether plaintiff's discharge for refusal to remove the "McGovern" bumper sticker from her automobile violated her First and Fourteenth Amendment right of freedom of speech; and (2) whether plaintiff was deprived of an interest in "property" or "liberty" in connection with her discharge which entitled her to procedural and substantive due process rights not accorded her. It is concluded that plaintiff's First and Fourteenth Amendment right of free speech was not violated by her discharge, and that plaintiff was not deprived of an interest in "liberty" or "property" in connection with her discharge.

### A. First Amendment Claim.

■ The burden was on plaintiff to prove that her discharge was predicated even in part on her exercise of First Amendment rights. *Roseman v. Indiana University of Pennsylvania, at Indiana,* 520 F.2d 1364 (3rd Cir. 1975); *Adams v. Campbell County School District, Campbell County, Wyoming,* 511 F.2d 1242 (10th Cir. 1975). Plaintiff carried that burden by proving that she was discharged because she refused to remove a partisan political bumper sticker bearing the inscription "McGovern"

from her automobile. A bumper sticker, like a campaign button or a political poster, is a means of personally expressing a political opinion. *Smith v. United States,* 502 F.2d 512 (5th Cir. 1974) [peace button]; *Phillips v. Adult Probation Dept., City and County of San Francisco,* 491 F.2d 951 (9th Cir. 1974) [poster]; *Hobbs v. Thompson,* 448 F.2d 456 (5th Cir. 1971) [bumper sticker].

■ Because plaintiff has carried her burden of proving that she was discharged for exercise of otherwise permissible First Amendment rights, the burden shifted to defendant to prove that valid state interests justified the restriction on freedom of expression. *Smith v. United States, supra,* at 517; *Smith v. Losee,* 485 F.2d 334, 339–340 (10th Cir. 1973). But see: *Kelley v. Johnson,* —— U.S. ——, 96 S.Ct. 1440, 47 L.Ed.2d 708, 44 L.W. 4469 (1976).

■ Plaintiff did not relinquish the First Amendment Rights she would otherwise enjoy as a private citizen merely by virtue of the fact she accepted employment by the Juvenile Court Services. "[T]he theory that public employment which may be denied altogether may be subjected to any conditions regardless of how unreasonable, has been uniformly rejected." *Pickering v. Board of Education,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811, 817 (1968); *Keyishian v. Board of Regents,* 385 U.S. 589, 605–606, 87 S.Ct. 675, 684–685, 17 L.Ed.2d 629, 641–642 (1967). Public employment is a benefit which cannot be conditioned on the denial of constitutional rights. *Perry v. Sinderman,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Keyishian v. Board of Regents, supra; Smith v. United States, supra,* at 516.

■ Nevertheless, as the Supreme Court recognized in *Pickering v. Board of Education, supra,*

" . . . it cannot be gainsaid that the State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of

the speech of the citizenry in general. *The problem in any case is to arrive at a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees."* 391 U.S. at 568, 88 S.Ct. at 1734, 20 L.Ed.2d at 817. (Emphasis added.)

*See also: Kelley v. Johnson, supra; Civil Service Commission v. Letter Carriers,* 413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973).

The precise nature of defendant's burden has not been clearly established. Several courts have stated that the applicable test is " . . . whether the exercise of First Amendment rights has been clearly demonstrated to work a material and substantial interference with plaintiff's duties." *Smith v. United States, supra,* at 517; *Smith v. Losee, supra.* Other courts have phrased the applicable test in terms of whether plaintiff's activities in fact interfered with or impeded the efficiency of public services performed by plaintiff. *Bertot v. School District No. 1, Albany Co., Wyoming,* 522 F.2d 1171 (10th Cir. 1975); *Roseman v. Indiana University of Pennsylvania, at Indiana, supra; Jannetta v. Cole,* 493 F.2d 1334 (4th Cir. 1974). Still other courts have employed a balancing test to determine whether valid governmental interests "outweigh" the plaintiff's First Amendment interests. *Paulos v. Breier,* 507 F.2d 1383 (7th Cir. 1974); *Bates v. Dause,* 502 F.2d 865 (6th Cir. 1974); *Phillips v. Adult Probation Dept., City and County of San Francisco, supra.* Two courts have required the state to demonstrate that an "overwhelming countervailing state interest" or a "compelling state interest" pertaining to plaintiff's employment justified the restriction of First Amendment activity. *Kiiskila v. Nichols,* 433 F.2d 745, 749 (7th Cir. 1970); *Hobbs v. Thompson, supra,* at 475. *Cf. Kelley v. Johnson, supra.*

█ Regardless of the test employed, defendant has demonstrated that the bumper sticker prohibition was justified by the state interest in promoting the effectiveness of employees of the Juvenile Court Services in performance of their duties as social workers, and by the state interest in preserving the integrity of the Circuit Court of the Sixteenth Judicial Circuit including the Juvenile Court thereof by avoiding the fact and appearance of political partisanship in operation of the court.

█ First, when an employee's duties require establishment and maintenance of a relationship of trust and confidence of troubled persons, the state has a valid interest in prohibiting activities which would adversely affect that relationship. For instance, in *Smith v. United States, supra,* a clinical psychologist employed to provide therapeutic treatment for veteran patients in need of emotional rehabilitation in a Veterans Hospital was discharged for his refusal to remove a "peace" pin worn in his lapel. The Fifth Circuit held that the prohibition against wearing peace pins was constitutionally valid in view of the emotionally disturbing effect of such pins on war veterans undergoing psychological treatment.

In *Phillips v. Adult Probation Dept., City and County of San Francisco, supra,* a deputy probation officer in the Family Support Section of the Adult Probation Department of the City and County of San Francisco was suspended for five days for refusal to remove a poster on the wall of his office which contained the legend "Wanted by the F.B.I.," beneath which were drawings of H. Rap Brown, Angela Davis, and Eldridge Cleaver, then fugitives sought by the Federal Bureau of Investigation, below which was printed:

> "Faith, Beauty, Integrity
> Reward
> Love-Peace-Happiness."

The Ninth Circuit ruled that

> "[plaintiff's] major function as a probation officer was to deal with divorce and child support problems by emphasizing 'the need for faithfully paying the

amounts either ordered by the court or agreed by the parties'. His supervisor could reasonably conclude, as he did, that it was inconsistent with [plaintiff's] function as a probation officer to place on the walls of his office a poster favorably depicting persons who were then fugitives from justice. In addition, the supervisor reasonably concluded from the reaction of appellant's co-workers that the poster would impair the efficiency of the Department through dissention and disharmony among the employees." *Id.,* at 955.

On the other hand, when an employee's duties do not depend on the establishment of relationships of trust and confidence, First Amendment restrictions such as that in this case cannot be justified. In *Hobbs v. Thompson, supra,* firemen brought a class action against a city ordinance that, inter alia, prohibited firemen from displaying bumper stickers on their automobiles. The Fifth Circuit ruled, on the facts found, that because the prohibition was unrelated to the proper performance of the firemen's employment duties, it was unconstitutional under the First Amendment.

And, in *Jannetta v. Cole, supra,* the Fourth Circuit ruled that discharge of a fireman for circulating a petition critical of promotion policies of the fire department violated the First Amendment because the fireman's activities did not affect his job performance.

In this case, plaintiff, as a deputy probation officer, dealt primarily with juvenile drug offenders, their families and their friends. The racial and ethnic backgrounds, and political persuasions, of plaintiff's probationers were varied. The evidence demonstrates that any partisan political bumper sticker, in these or other possible circumstances, could inject an avoidable adverse factor into the relationship between plaintiff, her clients, and other employees in the Juvenile Court Services which could make the work of plaintiff, other officers and judges of the circuit court much more difficult if not impossible. The bumper sticker prohibition extended not only to the

"McGovern" sticker on plaintiff's automobile, but to stickers supporting candidates of the Nazi party, Ku Klux Klan, and other political figures whose politics today are more likely to arouse and inflame the emotions of plaintiffs' probationers. Under these circumstances, the Juvenile Court could reasonably conclude that any partisan bumper sticker could result in a material and substantial interference with plaintiff's duties and that a compelling state interest in promoting the effectiveness of Juvenile Services employees and of the Circuit Court, justified the prohibition against all partisan political bumper stickers.

Second, that the state has a valid interest in prohibiting its employees from engaging in partisan political activities has been repeatedly recognized by the Supreme Court. *Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); *Civil Service Commission v. Letter Carriers, supra; United Public Workers v. Mitchell,* 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947). *See also: Paulos v. Breier, supra.* Plaintiff does not challenge this principle, but contends, (1) that the State of Missouri has not prohibited *employees* of the Juvenile Court from engaging in partisan political activity; (2) even if the State has prohibited employees of the Juvenile Court from engaging in partisan political activity, display of a "McGovern" bumper sticker does not constitute partisan political activity; and (3) in any event, display of a bumper sticker by Juvenile Court employees cannot be constitutionally prohibited. Defendant contends (1) that Article 5, Section 29(f) of the Missouri Constitution of 1945 was intended to prohibit employees of the courts from engaging in partisan political activities; (2) that display of a "McGovern" bumper sticker constitutes partisan political activity; and (3) that the First and Fourteenth Amendments do not protect that activity.

(1)

Whether Article 5, Section 29(f) was intended to prohibit employees of courts under the nonpartisan court plan from engag-

ing in partisan political activity is not a determinative issue in this case. Even if the bumper sticker prohibition was not authorized by Article 5, Section 29(f) it would nevertheless be valid if supported by the requisite state interests. *Compare: Paulos v. Breier, supra; Phillips v. Adult Probation Dept., City & County of San Francisco, supra.* However, because the origin of the prohibition may be material to the nature and substantiality of the state interest asserted in defense thereof, the issue will be considered.

Article 5, Section 29(f), prohibits *judges* from "directly or indirectly" taking part in any political campaign. Plaintiff contends the provision is limited by its terms to "judges." Defendant contends that the prohibition against "indirect" involvement by judges in political campaigns was intended to extend the provision to court employees, citing *State ex rel. Weinstein v. St. Louis County,* 451 S.W.2d 99 (Mo. en banc 1970), which held that because employees of the Juvenile Court, such as probation officers, are necessary to the proper performance of the court's duties, the court has inherent power to provide such personnel.

There is no recorded legislative history of the adoption of Article 5, Section 29(f) because it was enacted by initiative. There are no reported decisions construing the provision.[8] The only judicial interpretations of the provision uncovered by the parties are those of Missouri circuit and probate judges who have construed the provision to extend to court employees.[9] This construction by a Missouri court is binding on the federal courts. *Gooding v. Wilson,* 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972). However, the scope of the provision may also be determined from the political context in which it was enacted and the function it was intended to perform.

The pervasive political control of judges and court employees which resulted in the nonpartisan court plan in 1940 has been noted above. Because of the importance of court employees to the functioning of the judicial system, the influence of politics on the courts could not have been effectively eradicated by limiting the principle of nonpartisanship to judges. Political influence over such court employees as the clerk and parole or probation officers poses the same threat to the integrity of the judicial system as political influence over the judge. It is therefore concluded that the prohibition in Article 5, Section 29(f), against "indirect" partisan political activity by judges was intended to extend Article 5, Section 29(f), to court employees.[10]

(2)

The second issue is whether display of a "McGovern" bumper sticker should be considered "partisan political activity." Plaintiff initially contended that the prohibition against "partisan political activity" by Juvenile Court employees in Section XIII of the January 1, 1969, order of the Sixteenth Judicial Circuit entitled "Juvenile Court Personnel Policies" was not intended to extend to bumper stickers and, if so, was unconstitutionally vague. The federal courts are bound by the construction given Section XIII by the Missouri courts. *Gooding v. Wilson,* 405 U.S 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972). Section XIII, and accordingly Article 5, Section 29(f), of the Missouri Constitution from which it was derived, have been construed by the Sixteenth Judicial Circuit of Missouri to extend to partisan political bumper stickers. In the absence of controlling contrary authority this binds the federal courts.

Plaintiff's vagueness contention is without merit in view of the specific lawful

---

8. The possibility that debates concerning the nonpartisan court plan were recorded during the Missouri Constitutional convention of 1945 has not been explored.

9. Testimony of Honorable Paul E. Vardeman, *supra,* p. 15; "Defendant's Post-Trial Brief," filed March 19, 1976, pp. 6–8.

10. This conclusion is contrary to, and overrules, a tentative contrary conclusion reached in consideration of the issue of abstention in the August 26, 1975, order narrowing the issues.

warnings given her by defendant that Section XIII extended to bumper stickers. See Section III(A) of August 26, 1975, "Order Denying Plaintiff's Motion For Summary Judgment and Order Narrowing the Issues . . . ."

(3)

■ The third issue is whether the state interest in nonpartisan courts is of sufficient substantiality to justify prohibiting employees of the Juvenile Court from displaying a partisan bumper sticker on automobiles used for Juvenile Court business and parked in the Juvenile Court parking lot. The Supreme Court has never decided whether government employees could constitutionally be prohibited from displaying partisan bumper stickers. The Hatch Act, sustained in *Civil Service Commission v. Letter Carriers, supra,* and *United Public Workers v. Mitchell, supra,* does not prohibit display of bumper stickers by federal employees. Section 733.111(a)(3), Title 5, Code of Federal Regulations. The Oklahoma version of the Hatch Act sustained in *Broadrick v. Oklahoma, supra,* had been interpreted by the State Personnel Board to extend to bumper stickers. The Supreme Court stated that "[i]t may be that such restrictions are impermissible . . . ," but did not expressly so rule, and declined to invalidate the entire statute because it reached "arguably" protected conduct. *Id.,* 413 U.S., at 618, 93 S.Ct. at 2919, 37 L.Ed.2d, at 843–844. The state interest in a nonpartisan civil service was not considered by the Fifth Circuit in *Hobbs v. Thompson, supra.*

However, the Supreme Court has recognized that:

" . . . it is not only important that the Government and its employees in fact avoid practicing political justice, but it is also critical that they appear to the public to be avoiding it, if confidence in the system of representative Government is not to be eroded to a disastrous extent." *Civil Service Commission v. Letter Carriers, supra,* 413 U.S., at 565, 93 S.Ct. at 2890, 37 L.Ed.2d, at 809.

*See also: Paulos v. Breier, supra,* at 1386. With respect to no governmental function is maintenance of the appearance of nonpartisanship more important than with respect to the judicial branch. The serious erosion of public confidence in the integrity of the judiciary experienced prior to adoption of the nonpartisan court plan in Missouri is evidence of that judgment.

In order to preserve the appearance of nonpartisanship, the Juvenile Court Services could constitutionally prohibit display of partisan political bumper stickers on automobiles used for official Juvenile Court business by Juvenile Court employees, and parked in the official Juvenile Court parking lot. The state interest in preserving public confidence in, and the fact of integrity of the judiciary is compelling, and outweighs the plaintiff's interest in publicly expressing her political preference through a bumper sticker.

B. *Procedural Due Process.*

■ Plaintiff contends that her discharge without a prior hearing and defendant's failure to institute available appeal procedures upon request following her discharge violated her right to procedural due process under the Fourteenth Amendment. However, plaintiff has failed to prove either that she enjoyed a "property" interest in her employment or that she was deprived of an interest in "liberty" in connection with her discharge which are prerequisites to the rights of procedural due process.

In determining whether plaintiff was denied due process, it must be determined whether the state has infringed upon a personal interest of life, liberty, or property protected by the Fourteenth Amendment. *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548.(1972); *Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974). The Supreme Court has noted that:

"The types of 'liberty' and 'property' protected by the Due Process Clause vary widely, and what may be required under that clause in dealing with one set of

interests which it protects may not be required in dealing with another set of interests." *Arnett v. Kennedy, supra,* 416 U.S. at 155, 94 S.Ct. at 1644, 40 L.Ed.2d at 34.

In order to prove that she was deprived of a property right by her dismissal, plaintiff must show that she possessed more than a unilateral expectation of continued employment. *Board of Regents v. Roth, supra.* Absent contractual, legislative, or constitutional provision guaranteeing a legitimate expectancy of continued employment, the power of removal is incident to the power of appointment and government employment can be revoked at the will of the appointing officer. *Harnett v. Ulett,* 466 F.2d 113 (8th Cir. 1972). A "property" interest in employment exists only if (1) an employee possesses statutory or contract rights to continued employment, (2) there is a *de facto* tenure program in existence, or (3) there is an implied promise or understanding that employment would not be terminated without procedural due process. *Perry v. Sinderman,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Brouillette v. Board of Directors,* 519 F.2d 126 (8th Cir. 1975); *Buhr v. Buffalo Public Sch. Dist.,* 509 F.2d 1196 (8th Cir. 1974); *Harnett v. Ulett, supra.*

■ Plaintiff has presented no evidence of a contractual, statutory, or state constitutional right to continued employment or of any *de facto* tenure program in the Juvenile Court Services. Further, plaintiff has failed to show that there was an express or implied understanding that she would be accorded procedural due process rights not fully granted in connection with her discharge. Section IX of the order of the Sixteenth Judicial Circuit of January 1, 1969, governing Juvenile Court Personnel Policies provided for two weeks notice of dismissal, written notice of the reasons for dismissal, and a personal discussion with the Director, all of which were accorded plaintiff. Section XVI of the order appears to provide for review of personal disagreement by the Juvenile Judge. However, it is not likely that such review would have changed the result since the Juvenile Judge initiated the bumper sticker prohibition under the order of the full Circuit Court. Nevertheless this remedy was expressly available, if an appeal or further review was desired. No administrative or judicial review thereunder was denied to plaintiff who chose to come directly to federal court.

■ An employee is deprived of an interest in "liberty" in connection with his or her discharge only when the discharge occurs under circumstances which impose upon the employee a stigma or other disability which forecloses his or her freedom to take advantage of other employment opportunities. *Board of Regents v. Roth, supra, Arnett v. Kennedy, supra; Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). The charges creating the stigma must be considerably graver than mere charges of improper or inadequate job performance, or of failure to meet minimum standards of professional conduct. They must involve imputation of illegal, dishonest or immoral conduct which call into question the former employee's good name, honor or integrity. *Lake Michigan Col. Fed. of Teachers v. Lake Mich. Com. Col.,* 518 F.2d 1091 (6th Cir. 1975); *Russell v. Hodges,* 470 F.2d 212 (2nd Cir. 1972); *Springston v. King,* 399 F.Supp. 985 (W.D.Va.1975). *Cf. Paul v. Davis,* —— U.S. ——, 96 S.Ct. 1155, 47 L.Ed.2d 405, 44 L.W. 4337 (1976).

■ Plaintiff has presented no evidence that the reason for her discharge was other than for her refusal to comply with the bumper sticker prohibition. This reason falls into the category of improper job performance, and does not impugn plaintiff's "good name, honor, or integrity." It is therefore concluded that plaintiff was not deprived of an interest in "liberty" in connection with her discharge.

For the foregoing reasons, it is therefore

ORDERED and ADJUDGED that the claims for relief in Count I, II and III of the complaint be, and they are hereby, adjudged to be without merit. It is further

160

ORDERED and ADJUDGED that plaintiff be, and she is hereby, denied all relief prayed for in the complaint.