Arvo W. KANNISTO and the San Francisco Police Officers Association, Plaintiffs-Appellants,

v.

The CITY AND COUNTY OF SAN FRANCISCO, a Municipal Corporation, et al., Defendants-Appellees.

No. 74–3193.

United States Court of Appeals, Ninth Circuit.

Aug. 31, 1976.

Rehearing Denied Sept. 29, 1976.

Arvo Kannisto, in pro. per.

Thomas O'Connor, City Atty., and Rene A. Chouteau, San Francisco, Cal., for defendants-appellees.

## OPINION

Before WRIGHT and SNEED, Circuit Judges, and LUCAS,* District Judge.

EUGENE A. WRIGHT, Circuit Judge:

Plaintiff-appellant Kannisto, a lieutenant in the San Francisco Police Department (department), made disrespectful and disparaging remarks about a superior officer while addressing his subordinates during a morning inspection. He described his superior as a most "unreasonable, contrary, vindictive individual," whose behavior was "unreasonable, belligerent, arrogant, contrary and unpleasant." Kannisto also said

---

* Honorable Malcolm M. Lucas, United States District Judge, of the Central District of California, sitting by designation.

1. The department originally cited as an alternate reason for suspension the publication by Kannisto of his opinions in a newspaper of the San Francisco Police Officers Association. The district court held that this publication was constitutionally protected (*see Hanneman v. Breier,* 528 F.2d 750 (7th Cir. 1976)), and re-

that his superior officer had given him improper orders on several occasions, which Kannisto had intentionally disobeyed.

For this action [1] he was suspended from duty for 15 days, pursuant to then-existing Department Regulation 2.13. That regulation provided:

> Any breach of the peace, neglect of duty, misconduct or any conduct on the part of any member either within or without the State which tends to subvert the good order, efficiency or discipline of this Department or which reflects discredit upon the Department or any member thereof, or that is prejudicial to the efficiency and discipline of the Department, though such offenses are not specifically defined or laid down in these Rules and Procedures shall be considered unofficerlike conduct triable and punishable by the Board.

Kannisto brought this action on behalf of himself and others under 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3). He argued that the regulation was unconstitutionally applied, and was overbroad and vague. The district court dismissed the action for failure to show a violation of a constitutional right. We affirm.

This court has previously set forth the guidelines by which we determine whether, in a context such as this, the regulated expression is protected. We stated in *Phillips v. Adult Probation Department,* 491 F.2d 951, 954–55 (9th Cir. 1974):

> It is well settled that First Amendment rights of expression are not absolute, and that regulation as to time, place and manner of exercise is proper when reasonably related to a valid public interest. *Cox v. Louisiana,* 379 U.S. 536, 558, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965). While

manded the case to the Police Commission as it could not determine what weight the Commission had given to the invalid reason.

On remand the Commission upheld the suspension solely on account of the statements made by Kannisto to his subordinates in the course of official duty. The district court thereupon dismissed the action, and this appeal followed.

"[t]he theory that public employment which may be denied altogether may be subjected to any conditions, regardless of how unreasonable, has been uniformly rejected", *Keyishian v. Board of Regents,* 385 U.S. 589, 605–606, 87 S.Ct. 675, 685, 17 L.Ed.2d 629 (1967), "it cannot be gainsaid that the State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general." *Pickering v. Board of Education,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968). The problem "is to arrive at a balance between the interests of the [public employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public service it performs through its employees." *Id.* (Brackets in original, footnote omitted.) [2]

It may be that the department does not have the identical interest in developing "instant unquestioning obedience" among its employees as does a military organization. *Dwen v. Barry,* 483 F.2d 1126, 1129 (2nd Cir. 1973), *rev'd on other grounds sub nom. Kelley v. Johnson,* 425 U.S. 238, 96 S.Ct. 1440, 47 L.Ed.2d 708 (1976). *See also Bence v. Breier,* 501 F.2d 1185, 1192 (7th Cir. 1974). Indeed, the Supreme Court has made it clear that "policemen, like teachers and lawyers [and unlike military personnel, *Parker v. Levy,* 417 U.S. 733, 758–60, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974)], are not relegated to a watered-down version of constitutional rights." *Garrity v. New Jersey,* 385 U.S. 493, 500, 87 S.Ct. 616, 620, 17 L.Ed.2d 562 (1967).

It is true, though, that the department has a substantial interest in developing "discipline, *esprit de corps,* and uniformity," *Kelley v. Johnson, supra,* 425 U.S. at 246, 96 S.Ct. at 1445, to insure adequate "promotion of safety of persons and property." *Id. See also Dwen v. Barry, supra,* 483 F.2d at 1129. Certainly a prohibition against the communication of an officer's disaffection to rank-and-file members of the department during regular duty hours may be considered as a necessary adjunct to the department's substantial interest in maintaining discipline, morale and uniformity.

The interest asserted by Kannisto is his right to comment on matters of public concern pertaining to the operation of the department of which he is a part. *Cf. Pickering v. Board of Education,* 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). The district court noted, and we agree, that in the abstract Kannisto's right is substantial because, as a member of the department, he is a person "extraordinarily able to inform the public of deficiencies in this important governmental department." *Cf. Pickering* at 572, 88 S.Ct. 1731.

Also weighing in the balance along with Kannisto's individual right is the right of the public to be informed. *Id.* at 573, 88 S.Ct. 1731.

To determine that application of the regulation herein comports with the First Amendment, we must find that the department's interest in discipline, *esprit de corps,* and uniformity on these facts outweighs the interests of the public and of Kannisto in the particular statements made.

The Court's decision in *Pickering* provides considerable guidance. The plaintiff in *Pickering* was a teacher discharged for submitting a letter to the local newspaper criticizing school board budgetary policies. The Court found that the public statement at issue related to a matter of general public concern and that "the fact of employment is only tangentially and insubstantially involved in the subject matter of the public communication." 391 U.S. at 574, 88 S.Ct. at 1738. The Court concluded that no peculiar state interest arising from the employment relationship was at stake and that Pickering was therefore entitled to the same First Amendment protection afforded the general public.

The *Pickering* Court noted:

The statements [were] in no way directed towards any person with whom appellant

---

2. *Cf. Kelley v. Johnson,* 425 U.S. 238, 249, 96 S.Ct. 1440, 1447 (1976) (Powell, J., concurring).

would normally be in contact in the course of his daily work as a teacher. Thus no question of maintaining either discipline by immediate superiors or harmony among coworkers is presented here. Appellant's employment relationships with the Board and, to a somewhat lesser extent, with the superintendent [were] not the kind of close working relationships for which it can persuasively be claimed that personal loyalty and confidence [were] necessary to their proper functioning.

The Court also emphasized that it was not shown, nor could it be presumed, that the statements at issue "in any way way either impeded the teacher's proper performance of his daily duties in the classroom, or . . . interfered with the regular operation of the schools generally." 391 U.S. at 572–73, 88 S.Ct. at 1737. (Footnote omitted.)

■ The facts in this case sharply contrast with those in *Pickering.* Here, Kannisto's comments were directed against one under whose direction he worked in close daily contact. Questions of discipline and harmony are clearly presented here. Kannisto's diatribe, delivered as it was before his men while in formation for inspection, can be presumed to have had a substantial disruptive influence on the regular operations of the department. *Cf. Phillips, supra,* 491 F.2d at 955–56. The department's conclusion that this was the case is entitled to considerable deference. *Kelley v. Johnson,* 425 U.S. at 246, 96 S.Ct. at 1445.

Moreover, we query whether the information imparted by Kannisto was "vital to informed decision-making" by those legitimately concerned with the department's operations. *Pickering,* 391 U.S. at 572, 88 S.Ct. 1731. While the nature of the information imparted by Kannisto may not affect the strength of his asserted right, it is in our view relevant to consideration of the substantiality of the public's interest in being informed.

Finally, it is clear to us that Kannisto exercised his asserted First Amendment

rights, not as a member of the general public, as in *Pickering,* 391 U.S. at 572, 88 S.Ct. 1731, but as an officer of the department. In this respect his rights are simply not the same as those asserted in *Pickering. See Phillips, supra,* 491 F.2d at 955.

For the reasons expressed, we conclude that the department has not unconstitutionally applied its regulation to protected conduct.

Kannisto also argues that even if his own conduct was unprotected, the department's regulation was nevertheless unconstitutionally overbroad. We disagree.

■ We reemphasize our belief that police department regulations, while perhaps not directly analogous to those of the military service, are entitled to considerable deference because of the state's substantial interest in creating and maintaining an efficient organization to carry out the important duties assigned by law. *Kelley v. Johnson,* 425 U.S. at 246 & n. 11, 96 S.Ct. at 1445 & n. 11.

■ This factor reinforces our conclusion that Kannisto's statements, made as they were during the regular performance of his duties, were so plainly inappropriate and disruptive that they were without doubt beyond the pale of protection afforded by the First Amendment. Moreover, the department's regulation appears to proscribe a wide range of similar or related conduct. Accordingly, even though the department might possibly apply the regulation to some conduct ultimately to be held protected,[3] we cannot, with only Kannisto's challenge as a predicate, invalidate the regulation for overbreadth. *Cf. Parker v. Levy,* 417 U.S. at 760–61, 94 S.Ct. 2547, 41 L.Ed.2d 439.

■ Kannisto also challenges the regulation as being unconstitutionally vague. Again, we disagree. While the language of the regulation, "unofficerlike conduct" which "tends to subvert the good order, efficiency or discipline of [the] Department" may be susceptible to vagueness challenges in some contexts, it is clearly not vague as applied to the facts of this case.

**3.** *See* note 1 *supra.*

As Justice White stated, writing for the Court in *Colten v. Kentucky,* 407 U.S. 104, 110, 92 S.Ct. 1953, 1957, 32 L.Ed.2d 584 (1972): "The root of the vagueness doctrine is a rough idea of fairness." The test for vagueness is whether " 'citizens who desire to obey the statute will have no difficulty in understanding it . . ..' " *Id., quoting Colten v. Commonwealth,* 467 S.W.2d 374, 378 (Ky.1971).

In our view there could be no reasonable doubt on Kannisto's part that a disparaging attack on his superior officer, communicated to patrolmen in the regular course of duty, would tend to "subvert the good order, efficiency or discipline of [the] Department." *See Bence v. Breier, supra,* 501 F.2d at 1195 (Jameson, J., concurring in part and dissenting in part). *Cf. Parker v. Levy,* 417 U.S. at 757, 94 S.Ct. 2547, 41 L.Ed.2d 439; *Allen v. City of Greensboro,* 452 F.2d 489, 491 (4th Cir. 1971). *A fortiori,* Kannisto could scarcely have doubted that his remarks would reflect "discredit upon" a member of the department.

Since the regulation clearly applies to Kannisto's conduct, he cannot challenge it for facial vagueness. *Parker v. Levy,* 417 U.S. at 756, 94 S.Ct. 2547, 41 L.Ed.2d 439.

Being unpersuaded by any of appellant's arguments, we affirm the decision of the district court.

SNEED, Circuit Judge (concurring):

I concur in Judge Wright's opinion.

This case presents an almost classic confrontation between the need to establish and maintain the efficiency of a particular activity of the state and the values of free speech protected by the First Amendment. The Constitution does not prohibit an accommodation of these interests. Nor should an accommodation in most instances require the intervention of the slow and somewhat ponderous federal judiciary. A society which accepts no accommodation save that mandated by a federal court is neither strong nor happy. Moreover, such reliance on the federal courts slowly saps their strength. Inevitably they become but another suspect mediative institution indis-

tinguishable from those they supplanted. We have not reached that point as yet. Being required to intervene in cases such as this, however, contributes little to our avoidance of this fate.