Carole E. WALL, Plaintiff,

v.

J. Tom COLEMAN, Chairman of the Chatham County Commission, et al., Defendants.

Civ. A. No. CV 474–256.

United States District Court, S. D. Georgia, Savannah Division.

April 18, 1975.

Fletcher Farrington of Hill, Jones & Farrington, Savannah, Ga., for plaintiff.

Emanuel Lewis, Anton F. Solms, Jr., Savannah, Ga., for defendants.

OWENS, District Judge:

Ms. Carole E. Wall, a licensed Georgia attorney (member of the State Bar of Georgia) and a former law clerk for one of the judges[1] of this court, complains under 42 U.S.C.A. § 2000e et seq., Title VII of the Civil Rights Act of 1964, alleging that because of her female sex she was denied employment as an Assistant District Attorney of the Eastern Judicial Circuit (Chatham County, Georgia), and that this denial was unlawful on account of the provisions of the 1964 Civil Rights Act.

The defendant county commissioners who are responsible for appropriating tax money to pay the salaries of Chatham County assistant district attorneys and the defendant district attorney who has the responsibility of hiring, supervising and firing assistant district attorneys who work under and for him, have moved to dismiss plaintiff's complaint contending that the office of assistant district attorney is exempt from

the provisions of the Civil Rights Act of 1964 by virtue of 42 U.S.C. § 2000e(f), which provides:

"For the purposes of this subchapter—

\*   \*   \*   \*   \*   \*

"(f) The term 'employee' means an individual employed by an employer, except that the *term 'employee' shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff,* or an appointee on the policy making level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office. The exemption set forth in the preceding sentence shall not include employees subject to the civil service laws of a State government, governmental agency or political subdivision." (Emphasis added.)

The defendant District Attorney Andrew J. Ryan, Jr. is an elected public official of the State of Georgia. 1945 Constitution of the State of Georgia § 2–4601 (Const. art. VI, § XI, par. 1). His duties are specified in the Georgia Constitution, to wit:

"It shall be the duty of the district attorney to represent the State in all cases in the superior court of his circuit and in all cases taken up from the superior courts of his circuit to the Supreme Court and Court of Appeals and to perform such other services as shall be required of him by law." § 2–4602 (Const. art. VI, § XI, par. 2);

and further by statute, to wit:

"Duties.—The duties of the district attorneys within their respective circuits are—

"1. To attend each session of the superior courts, regular or adjourned, unless excused by the judge thereof,

---

1. Because of the plaintiff's recent association with the court as a law clerk both Chief Judge Lawrence and Judge Alaimo recused themselves and requested this judge who is

designated by Chief Judge Brown to sit in the Southern District of Georgia, to decide this case.

and remain until the business of the State is disposed of.

"2. To attend on the grand juries, advise them in relation to matters of law, and swear and examine witnesses before them.

"3. To administer the oaths the laws require, to the grand and petit jurors, to the bailiffs or other officers of the court, and otherwise to aid the presiding judge in organizing the courts as he may require.

"4. To draw up all indictments or presentments, when requested by the grand jury, and to prosecute all indictable offenses.

"5. To prosecute or defend any civil action in the prosecution or defense of which the State is interested, unless otherwise specially provided for.

"6. To attend before the appellate courts when any criminal cause is tried emanating from their respective circuits, argue the same, and perform any other duty therein the interest of the State may require.

"7. To collect all moneys arising from fines and forfeited recognizances, all costs on criminal cases when paid into court before judgment, and not otherwise; and at the fall term of each court, every year, to settle with the county treasurer, and pay over to him all moneys due him according to law, after a fair and full settlement.

"8. To settle at the same time with the preceding district attorney, and pay over to him any moneys collected to which he may be entitled, and to render to him, whenever required by him, a just statement of the condition of his interests.

"9. To collect all money due the State in the hands of any escheators, and pay it over to the educational fund; and, if necessary, compel them to pay by rule or order of court, or other legal means.

"10. To collect all claims of the State they may be ordered to do by the Comptroller General, and to remit the same within 30 days after collection; and on the first day in October every year to report to him the condition of the claims in their hands in favor of the State, particularly specifying the amounts collected and paid, from what sources received and for what purposes, and to whom paid; what claims are unpaid, and why; what judgments have been obtained, when, and in what court; what suits are instituted, in what courts, and their present progress and future prospects.

"11. To perform such other duties as are or may be required by law, or which necessarily appertain to their office." 1933 Ga.Code Ann. § 24–2908.

■ Unquestionably District Attorney Ryan is a "person elected to public office" within the meaning of 42 U.S.C. § 2000e(f). Are his assistant district attorneys "person[s] chosen by such officer to be on such officer's personal staff"?

The report of the conference committee of the House and Senate as to this section states:

"Under the House bill, there was no provision for an expansion of coverage of Title VII.

"The Senate amendment expanded coverage to include:

'(1) State and local government, governmental agencies, political subdivisions (*except for elected officials, their personal assistants and immediate advisors*) and the District of Columbia departments and agencies (except where such are subject by law to the Federal competitive service). State agencies previously covered by reference to the United States Employment Service continue to be covered; and

'(2) employers who employ 15 or more full-time employees and labor organizations with 15 or more mem-

bers beginning one year after enactment.

\*    \*    \*    \*    \*    \*

"The House receded with an amendment *exempting, in addition to State and local government elected officials, persons chosen by such officials to be on their personal staffs,* appointees of such officials on a policy making level or immediate advisors of such elected officials. The exemption does not include civil service employees.

"It is the *intention of the conferees to exempt elected officials and members of their personal staffs,* and persons appointed by such elected officials as advisors or to policymaking positions at the highest levels of the departments or agencies of State or local governments, such as cabinet officers, and persons with comparable responsibilities at the local level. It is the conferees [sic] intent that this *exemption shall be construed narrowly.* Also, all employees subject to State or local civil service laws are not exempted." 1972 U.S.Code Congressional and Administrative News, p. 2180. (Emphasis added.)

This report sheds no additional light on the meaning of the statutory language. It does assist the court by pointing out that it was the intent of Congress that this exemption be narrowly construed.

█ The Act in question does not define the terminology "personal staff". The court's research indicates that terminology was not taken from any other federal statute or decided case. Surprisingly only one decided case interpreting the word "staff" was found anywhere and that is referred to in 81 C.J.S. at p. 843: Beta Nu Chapter, Delta Sigma Theta Sorority v. Smith, 120 Ind.App. 95, 89 N.E.2d 722, 724. According to C.J.S. that State of Indiana case defined "staff" as "a body of assistants carrying out the will of a superior." Therefore to reach the result intended by Congress the words of this statutory exception "must be interpreted in the light of rea-

son and common understanding", Rathbun v. United States, 355 U.S. 107, 109, 78 S.Ct. 161, 163, 2 L.Ed.2d 134 (1957), upon "the assumption that the legislative purpose is expressed by the ordinary meaning of the words used." Richards v. United States, 369 U.S. 1, 9, 82 S.Ct. 585, 591, 7 L.Ed.2d 492 (1962).

Webster's New International Dictionary, Second Edition Unabridged, contains the following definitions:

(1) "personal staff. *Mil.* The aides-de-camp of a general officer.

(2) "personal, *adj.* . . . 1. Of or pertaining to a particular person; affecting an individual, or each of many individuals; peculiar or proper to private concerns; not public or general; as, *personal* allegiance, comfort, desire, baggage.

2. **a** Done in person, without the intervention of another; direct from one person to another; as, a *personal* inquiry; also, *Obs.*, engaged or present in person. **b** Carried on between individuals directly.

3. Pertaining to the person, or body; bodily, as, *personal* charms, appearance, ornaments, liberty.

4. **a** Relating to an individual, his character, conduct, motives, or private affairs, esp. in an invidious and offensive manner; as, *personal* reflections or remarks; also, relating to oneself; as, *personal* vanity. **b** Making or given to making personal reflection.

\*    \*    \*    \*    \*

6. Exclusively for a given individual, as a *personal* letter.

\*    \*    \*    \*    \*

8. *Law.* Designating, or of or pertaining to, personal property (which see); as, *personal* estate; *personal* interests.

9. *Gram.* Denoting person; as, a *personal* suffix; also, now rarely, designating a verb that is in-

flected for all three persons;—in contrast to *impersonal*.

(3) "staff . . .

6. A body of assistants serving to carry into effect the plans of a superintendent or manager; as, the *staff* of a newspaper; a hospital *staff*; also, the body of officers of administration and instruction of an educational institution.

7. The group of officers and aides-de-camp appointed to attend upon, and serve as escort to, a civil executive, esp. a president or governor.

\* \* \* \* \*

11. [FROM STAFF, 2 c.] *Mil.* An establishment, or aggregation, of officers, not having command, but having administrative and executive duties, in various departments attached to an army, to a section of an army, or to the commander of an army or section of any army; specif: In the United States Army: **a** The aggregation of the staff departments and corps in contradistinction to *the line*. See 2d LINE, 41 f. **b** The aggregation of staff officers and aides-de-camp who assist a military commander in the administration, command, and supply of the troops. **c** Rarely, the general staff." p. 2450.

In the court's best judgment these dictionary definitions fairly state the general ordinary meaning of the said words at the time Congress enacted the statutory language in question. The specific meaning as applied to an assistant district attorney of Chatham County, Georgia, presents a further question.

The legislature of the State of Georgia during its 1970 session provided for assistant district attorneys to be appointed in each of Georgia's superior court judicial circuits and as to tenure, qualification and duties provided:

"Section 2. Each assistant district attorney provided for in section 1 shall serve at the pleasure of the district attorney and he shall possess the qualifications provided for in Code section 24–2901, as amended, and shall not engage in the private practice of law.

"Section 3. Each assistant district attorney provided for in section 1 shall have such authority, powers and duties as are given or assigned by the district attorney of the judicial circuit." 1970 Ga.Laws, p. 717.

As demonstrated by the 1945 Constitution of Georgia and the laws of Georgia pertaining to district attorneys and assistant district attorneys, the defendant District Attorney Andrew Ryan, Jr. holds office for a period of four years as a result of having been publicly elected by the voters of the judicial circuit that he serves. As district attorney Mr. Ryan like all Georgia district attorneys, is responsible for the prosecution of all felony criminal cases since the superior court that he serves has exclusive jurisdiction of such cases. 1945 Constitution of the State of Georgia § 2–3901, (Const. art. VI, § IV, par. 1), and 1933 Code of Georgia Annotated § 24–2615. In addition he has all the duties and responsibilities enumerated in Code Annotated section 24–2908. The circuit that he serves is known as the Eastern Circuit but consists only of Chatham County, the county seat of which is Savannah, and the county population of which according to the 1970 census was 187,816. Three superior court judges serve that court. 1974 Georgia Official Directory of State and County Officers.

When Mr. Ryan runs for re-election, he, as everyone knows, submits himself to the electorate of Chatham County suggesting that on account of the good job he has done for the people of Chatham County, he should be re-elected. As everyone also knows the impression that the electorate has of the manner in which Mr. Ryan has attended to his duties is most likely the largest single fac-

tor that will influence them when they go to the polls.

According to Georgia Laws 1970, p. 716, Mr. Ryan is entitled to appoint a minimum of three assistant district attorneys. Mr. Ryan is authorized by said law [2] to delegate to each of them all or so much of the general authority, duties and responsibilities of his office as he wishes to delegate. As a matter of common knowledge and experience we know that Mr. Ryan gets public credit for the good job done and impression made by his assistants and gets public criticism for the poor performance or impression made by his assistants. At election time he is judged by what he and his assistants have done.

The term staff in its broadest sense, i. e., "A body of assistants serving to carry into effect the plans of a superintendent or manager . . . " would include everyone employed in the office of a district attorney—assistant district attorneys, secretaries, file clerks, investigators, and others. In its narrowest sense, i. e., "The aides-de-camp of a general officer" the term would include at least the assistant district attorneys, the persons who can do all that the district attorney himself can do. That the assistants appointed by District Attorney Ryan do what he delegates to them, serve at his pleasure and work as his assistants instead of working as assistants for all district attorneys of this state or the superior court or the Attorney General of Georgia, further demonstrates that their position as an assistant is "of or pertaining to a particular person"— Mr. Ryan. They each represent him in everything they do as an assistant district attorney. A more personal relationship would be hard to create.

█ It is thus the court's considered judgment that giving the statutory language the narrowest possible construction, an assistant district attorney is a member of the personal staff of this publicly elected defendant district attorney and as such is not a position of employment subject to the 1964 Civil Rights Act, 42 U.S.C. § 2000e et seq. Defendants' motions to dismiss plaintiff's complaint must therefore be and are granted.

2. Section 3. Each assistant district attorney provided for in section 1 shall have such authority, powers and duties as are given or assigned by the district attorney of the judicial circuit."