**Rita Jean MANLEY, Plaintiff,**

v.

**MOBILE COUNTY, ALABAMA, Mobile County Sheriff's Department, Thomas J. Purvis, Individually and in his official capacity of Sheriff of Mobile County, Alabama, Charles Wimberly, Individually and in his official capacity of Chief Deputy Sheriff of Mobile County, Alabama, all jointly and severally, Defendants.**

**Civ. A. No. 76–536–P.**

United States District Court,
S. D. Alabama, S. D.

Dec. 12, 1977.

Gregory B. Stein, Larry T. Menefee, Mobile, Ala., for plaintiff.

James C. Wood, Asst. County Atty., Roderick P. Stout, Mobile, Ala., for defendants.

## OPINION AND ORDER

PITTMAN, Chief Judge.

The plaintiff's cause of action is based on sex discrimination in employment by Mobile County, Alabama, the Sheriff of Mobile County, Thomas J. Purvis, individually and in his capacity as Sheriff, and Chief Deputy Charles Wimberly, individually and in his official capacity. Plaintiff, a female, contends the defendants refused to hire her as an identification assistant officer with the Sheriff's office because she is a female. Such a course of action, she contends, was violative of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. and 42 U.S.C. § 1983.

Plaintiff seeks to invoke jurisdiction pursuant to Title 28 U.S.C. §§ 1343(3), 2201, and 2202.

The plaintiff seeks the following relief:

(a) a declaratory judgment that the practices and policies complained of herein violate the provisions of 42 U.S.C. §§ 1983 and 2000e, *et seq.*;

(b) an injunction enjoining defendants and those acting in concert with them and at their direction from engaging in hiring practices that discriminate against the plaintiff on account of her sex and enjoining defendants from failing and refusing to offer the plaintiff immediate employment;

(c) an award of back pay in the amount she would have earned from the date of her rejection, to and including the date of judgment herein, but for defendants' discriminatory hiring policies and practices;

(d) an award of compensatory and punitive damages in the amount of fifty thousand dollars;

(e) an award of costs in this action, including an award of reasonable attorneys' fees;

(f) such other and further equitable relief as the court may deem just and proper.

The defendant, Mobile County, contends it is not a "person" subject to 42 U.S.C. § 1983. It further contends it is not an employer or person engaged in an industry affecting commerce within the meaning of § 2000e. It further asserts that it has not discriminated nor had any contact with the plaintiff in her attempt to secure employment with the Sheriff of Mobile County who is an elected public official in charge of both his office and personnel and who, furthermore, is not an agent, servant, or employee of Mobile County. The Sheriff's Office and facilities are funded by the defendant Mobile County as well as by federal grants and certain taxes earmarked specifically for his office.

The defendants Purvis and Wimberly contend they are not employers within the meaning of § 2000e(b). They further contend plaintiff was not discriminated against because of her sex but that the duties of the office she sought require a person of the male sex, i. e., a bona fide occupational qualification (bfoq) provided for in 42 U.S.C. § 2000e–2(e), restricts the position to a male.

## FINDINGS OF FACT

The plaintiff, Rita Jean Manley, is a white, female citizen of the United States and of the State of Alabama.

The defendant Purvis is now and has at all times material to this action, served as the Sheriff of Mobile County, Alabama. As a Sheriff, he is a constitutionally recognized executive officer of the State of Alabama under the Constitution of Alabama of 1901.

The defendant Wimberly is now and has at all times material to this action been the Chief Deputy Sheriff of Mobile County, Alabama.

Mobile County *qua* county was established by the Constitution of Alabama of 1901. The Mobile County Commission is regulated by legislative acts which direct it to furnish the Sheriff of Mobile County with such quarters, supplies and equipment, together with the maintenance and repair of equipment, as are reasonably necessary for the efficient operation of the Mobile County Sheriff's office.

Sometime in January, 1975, the plaintiff visited the "Intergovernmental Job Office" maintained at 31 North Royal Street, Mobile, Alabama, and completed a postal card which was to be sent to her as notification in the event that the Mobile County Personnel Board accepted applications for the position of Identification Assistant Officer. In the latter part of June, 1975, the plaintiff was in fact notified that the Mobile County Personnel Board was accepting applications for the aforementioned position. The plaintiff applied for such job, taking a competitive examination administered by the Personnel Board shortly thereafter. In early August 1975, the plaintiff received a notice from the Personnel Board informing her that she had successfully completed the written section of the examination for Identification Assistant Officer and requesting she appear for an interview at the office of the Personnel Board on August 18, 1975. The plaintiff reported to the Personnel Board's office at the stated time and was interviewed by Mr. Marvin Richardson. He informed her that she had passed the examination.

On November 26, 1975, the plaintiff received another notice from the Mobile County Personnel Board, informing her that she had received a "final rating" of 86.91 on the examination for Identification Assistant Officer and had been ranked second on the employment register of eligible individuals seeking the position.

In December 1975, two persons, both male, were hired as Identification Assistant Officers.

The plaintiff filed a charge of sex discrimination with the Equal Employment Opportunity Commission on the basis of

defendants' refusal to hire her as an Identification Assistant Officer, and commenced this action in the appropriate district court upon receipt of statutory notice of her right to sue under Title VII of the Civil Rights Act of 1964 within the appropriate time limits.

All Identification Assistant Officers and Identification Officers employed with the defendant Mobile County Sheriff are males.

The defendant Wimberly had immediate responsibility for hiring the persons to the vacancies existing in the job of Identification Assistant Officer in December 1975. This authority was delegated to him by defendant Thomas J. Purvis.

Except for one process server supplied and funded by the Comprehensive Employment and Training Program, the Sheriff did not employ females for any duties other than clerical work prior to the date of the alleged discrimination in late 1975.

The defendants Purvis and Wimberly do not question the qualifications of the plaintiff, but contend that due to extraordinary circumstances existing in the jail (overcrowding as a result of a statewide order restricting the numbers in the state penitentiaries mandates state prisoners' incarceration in the County Jail), a male is required for the job the plaintiff sought.

The jail population is all male with more than half of the inmates being felons, including from time to time, murderers, robbers, rapists, and men responsible for other crimes of violence. Escapes are a constant hazard as are disruptions caused by unruly prisoners. Hostages have been taken. Officers have been stabbed and otherwise assaulted.

The principal duties of the Identification Assistant Officer are to fingerprint and photograph all incoming prisoners and inmates against whom additional charges may be filed. Ordinarily, this officer will take a prisoner from the docket room on the main floor to a windowless, basement room approximately 10 × 20 feet, access to which is gained through a solid wooden door. The defendants contend, under these circumstances, such duties do not constitute a "woman's job" and should be handled only by males. The plaintiff contends there are no physical or gender requirements in the job description and that she possesses previous experience and performed the duties without difficulties in a similar job.

Defendant Wimberly, the designated authority to make the officer selection, employed Patrick Pyle for the position because he had told Pyle that if he left the Prichard Police Department with a good record and was on the certified list, he would receive the appointment. He was on the certified list and was appointed.

The court finds that approximately three days after the certified list was submitted by the Personnel Board, from which the Sheriff must make his appointments, the plaintiff talked with the defendant Wimberly. This was accomplished only after repeated efforts to do so. He told her, in substance, that a man had been hired and he could interview her but it would be futile because the jail population was all male and even with an interview, he would not hire her. She responded by asking if he was telling her that he would not hire her because she was a female. He replied, yes, that was what he was saying.

The court finds the defendant discriminated against the plaintiff because of her sex.

A person hired as an Identification Assistant Officer on January 1, 1976, would earn a starting salary of $600.00 per month. The salary was raised to $613.00 per month as of November 1976, and remains at $613.00.

The plaintiff was employed at Gleem Paint Center from December 3, 1975, until February 15, 1976, at the salary of $500.00 per month. From February 15, 1976, until May 10, 1976, the plaintiff was unemployed. On May 10, 1976, the plaintiff began employment at the Merchants National Bank at a monthly rate of $475.00 per month. On September 1, 1976, she received a pay raise to $500.00 per month; and on April 1, 1977, she received a pay raise to $550.00 per month. She received Unemployment Compensation, $75/$80 per week, during the term of her unemployment, to wit, February 15, 1976 to May 10, 1976.

## CONCLUSIONS OF LAW

Relief is granted on the plaintiff's Title VII allegations, therefore, her § 1983 claim will not be discussed.

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, proscribes discrimination in employment against a person because of her or his sex. The pertinent statutory language specifically provides: "It shall be an unlawful employment practice for an employer . . . to fail or refuse to hire . . . any individual . . . because of such individual's . . sex. . . ." 42 U.S.C. § 2000e–2(a)(1). The Fifth Circuit recently spoke to the basic intent of this legislation:

> "The Supreme Court has noted that the objective of Congress in passing the Civil Rights Act of 1964, of which the sex discrimination provision was a part, was to achieve equality of employment opportunity and to remove certain barriers. These barriers are those which operate to favor one group of employees identifiable by . . . sex . . . ."

*Stroud v. Delta Air Lines, Inc.*, 544 F.2d 892, 893 (5th Cir. 1977).

Above and beyond the purpose of Title VII, however, is a more important aspect of its operation. The Supreme Court defined the bottom line of the law forbidding sex discrimination in employment when it declared last term: "[I]t is impermissible under Title VII to refuse to hire an individual woman or man on the basis of stereotyped characterizations of the sexes." *Dothard v. Rawlinson*, —— U.S. ——, 97 S.Ct. 2720, 53 L.Ed.2d 786, 800 (June 27, 1977). Chief Judge Brown expressed the same sentiments concerning the operation of Title VII a few years ago:

> "If the capacity or competency distinction upon which the employer's selection is based inheres in the nature of an employee as a man or woman, or if the employer in any way permits stereotypical culturally-based concepts of the activities of people to perform certain tasks because of their sex to creep into its thinking, then Title VII will come to the [prospective] employee's aid."

*Pond v. Braniff Airways, Inc.*, 500 F.2d 161, 166 (5th Cir. 1974).

■ Of course, Title VII law must be applied to those factual situations which fall within the ambit of its protections. The case *sub judice* appears to be one of those instances where legal sanctions are in order since the "paradigm case of explicit sex discrimination is where sex itself, as a broad generic classification is the sole basis of the action taken by the employer. Such a case occurs when an employer simply refuses to hire women for a certain position." *Employment Discrimination and Title VII of the Civil Rights Act of 1964*, 84 Harv.L.Rev. 1109, 1170 (1971). The defendant Wimberly predicated his decision to ignore the plaintiff as a potential employee on the basis of her gender. Such employer conduct simply does not comport with either the letter or spirit of Title VII legislation. In such an event, the provisions of Title VII have to be applied.

Title VII is aimed at policing the "employer" who is statutorily described as

> "a *person* engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such person. . . . "

42 U.S.C. § 2000e(b) (emphasis supplied). "The term 'person' includes one or more individuals, governments, governmental agencies, political subdivisions, labor unions, partnerships, associations, corporations, legal representatives, mutual companies, joint-stock companies, trusts, unincorporated organizations, trustees in Bankruptcy, or receivers."

42 U.S.C. § 2000e(a).

■ The defendants Purvis and Wimberly are law enforcement officials with the responsibility and power to employ staff members. They are "employers" within the meaning of § 2000e. The defendant Mobile County has contended it is *not* a "person" or "employer" within the parameters of Title VII. This court finds there is sufficient nexus between defendant Mobile County and the County Sheriff's Department to

warrant its inclusion as a Title VII "employer" defendant in this decree.

The Mobile County Sheriff is an elected *State* official, but the legislature of this State has seen fit to require the Mobile County Commission, the governing body of Mobile County, to provide the Sheriff with such quarters, supplies, and equipment as are reasonably necessary for the operation of his office. Therefore, any money judgment against the Sheriff or his department alone would have substantially less meaning or efficacy since Mobile County provides the financial underpinnings for the county law enforcement division.

"[T]he 1972 amendment to Title VII . . [42 U.S.C. § 2000e(a)], . . . broadened the definition of 'person' under the Act so as to include 'governments, governmental agencies [and] political subdivisions' . . . ."

*Monell v. Department of Soc. Serv.,* 532 F.2d 259, 261 (2d Cir. 1976), *cert. granted,* 429 U.S. 1071, 97 S.Ct. 807, 50 L.Ed.2d 789 (1977).

In *Monell,* the Court of Appeals for the Second Circuit declared that "municipalities and their subdivisions are employers within the meaning of [Title VII]." *Id.* This is analogous to counties since, like cities, they constitute one level of local government. Providing language identical to that found in § 2000e(a), the Supreme Court of Alabama has construed the statutory definition of "county" found at *Ala.Code* § 11–1–1 (1975) to be "a *political subdivision* of the state . . . ." *Jefferson County v. Johnson,* Ala., 333 So.2d 143, 145 (1976) (emphasis supplied).

A recent, well-reasoned district court decision found that "Ward County, as a political subdivision of the state of North Dakota . . . [was an 'employer'] within the meaning of Title VII. And the coverage of state and local governments under Title VII is within Congressional power under the Fourteenth Amendment, the basis upon which Congress extended coverage to these entities." *Howard v. Ward County,* 418 F.Supp. 494, 501 (N.D.1976). The *Ward County* case possesses relevant factual similarities to the case now before this court in

that a woman alleged sex discrimination in the salary levels of the county sheriff's department. The original defendants were the county and its board of commissioners who subsequently filed a third-party complaint against the sheriff contending that all personnel matters were within the sole province of the sheriff. Significantly, the district court ruled that there were sufficient economic ties between the county and the sheriff to allow a Title VII suit against the county to stand. The same is true of Mobile County and its relationship to the county sheriff's department. This court holds Mobile County is an "employer" under Title VII and a proper defendant in this case.

Two major rationales have been tendered by the defendants as the bases for the plaintiff's failure to be considered as a candidate for the job of Identification Assistant Officer.

■ The first proffered explanation dealt with the provisional arrangements made with the two males who were hired prior to the plaintiff's appearance as a qualified applicant for the position. To permit an employer who has failed in the past to hire women for anything other than clerical duties to engage in prior employment commitments to *male* applicants is a questionable practice which would effectively preclude the consideration of any female, thereby defeating the purpose of Title VII. In this regard, the Fifth Circuit has stated that district "[c]ourts must be extremely careful to determine that the reasons given for selecting a male applicant over a female applicant are not simply a ruse disguising true discrimination. Courts must further carefully scrutinize the employer's explanations for its conduct. . . . " *Pond, supra* at 166.

The selection procedure employed in this case created a discriminatory closed door to a female applicant. The Fifth Circuit has stated that "the Act should reach any device or policy of an employer which serves to deny acquisition . . . of a job . . *because* the individual is either male or female." *Willingham v. Macon Tele. Publ. Co.,* 507 F.2d 1084, 1091 (5th Cir. 1975).

A second explanation for the plaintiff's not being considered for employment consisted of "special circumstances" present in the county jail. Defendants Purvis and Wimberly testified that the duties of the job of Identification Assistant Officer could be performed by a woman. Furthermore, they did not question the qualifications of the female applicant. However, the defendants claimed that if, in fact, there were discrimination on account of sex there were present justifications for such a discriminatory position that are both recognized and condoned as a defense to Title VII actions. 42 U.S.C. § 2000e–2(e) provides:

"[I]t shall not be an unlawful employment practice for an employer to hire and employ employees . . . on the basis of his . . . sex . . . in those certain instances where . . . sex . . . is a bona fide occupational qualification reasonably necessary to the normal operation of that particular business or enterprise . . . ."

The bfoq defense is a practical element of the statutory scheme which recognizes that there are circumstances where the attributes of one sex equip the members of that sex with special abilities to meet the exigencies created by particular positions of employment. "[Title VII] thus evidences a judgment that certain functional differences, both physically and culturally defined, exist between the sexes, and that employers can legitimately accommodate such differences in their hiring. . . ." 84 *Harv.L.Rev., supra* at 1176.

■ The bfoq defense can by no means serve as a subterfuge to benefit recalcitrant employers; rather, it is applicable only in rare, appropriate circumstances. In the recent *Dothard* opinion, the Supreme Court acknowledged the "narrow ambit of the bfoq exception," and continued:

"The virtually uniform view of the federal courts [is] that § 703(e) provides only the narrowest of exceptions to the general rule requiring equality of employment opportunities. This view has been variously formulated. In *Diaz v. Pan American World Airways,* 442 F.2d 385, 388 [(5th Cir. 1971)], the Court of Appeals for the Fifth Circuit held that 'discrimination based on sex is valid only when the *essence* of the business operation would be undermined by not hiring members of one sex exclusively.' (emphasis in original.) In an earlier case, *Weeks v. Southern Bell Telephone and Telegraph Co.,* 408 F.2d 228, 235 [(5th Cir. 1969)], the same court said that an employer could rely on the bfoq exception only by proving 'that he had reasonable cause to believe, that is, a factual basis for believing, that all or substantially all women would be unable to perform safely and efficiently the duties of the job involved.'"

*Dothard v. Rawlinson, supra,* —— U.S. at ——, 97 S.Ct. at 2728–2729, 53 L.Ed.2d at 799–800. While the Court expressed no view on the proper formulation of the bfoq defense, its basic position is that this exception to the strictures of Title VII is to be confined to a small set of special jobs.

Although the Supreme Court found a valid bfoq defense existent in *Dothard,* the factual context of that case must be examined to determine if the same can be said in the instant case. In *Dothard,* Diane Rawlinson "sought employment with the Alabama Board of Corrections as a prison guard called in Alabama a 'correctional counselor.'" *Dothard, supra,* —— U.S. at ——, 97 S.Ct. at 2723, 53 L.Ed.2d at 793. In detailing the duties of the sought-after position, the Court noted that "[a] correctional counselor's primary duty within these institutions [all-male maximum security penitentiaries] is to *maintain security and control of the inmates* by continually supervising and observing their activities." *Id.* —— U.S. at ——, 97 S.Ct. at 2725, 53 L.Ed.2d at 796. (Emphasis added.) Writing for the majority, Justice Stewart grounded his decision that permitted excluding females from consideration for employment with this language: "[t]he essence of a correctional counselor's job is to maintain prison security." *Id.* —— U.S. at ——, 97 S.Ct. at 2730, 53 L.Ed.2d at 801. Additionally, the Court was influenced by the fact that the correctional counselor's job was a "contact" position requiring a great deal of personal physical interaction with the men incarcerated. The Court took

pains to confine its bfoq pronouncement to the "job of correctional counselor in a 'contact' position in an Alabama *male maximum security* penitentiary." *Id.* —— U.S. at ——, 97 S.Ct. at 2730, 53 L.Ed.2d at 802. (Emphasis supplied).

The holding in *Dothard* is factually distinguishable from the circumstances presented to this court in the action *sub judice*. Although the Identification Assistant Officer *does* work in an all-male facility as in *Dothard,* there are substantive variances between the county jail and the state institutions as well as between the job of correctional counselor and the one involved in this case. The county jail is not a maximum security facility. The duties of the job sought by the plaintiff is, at best, a *minimum* "contact" position without any real supervisory requirements. Most importantly, the position of Identification Assistant Officer does not have as its "essence" the "maintenance of security" which was the foundation for the successful bfoq defense in *Dothard.* Without the presence of the key variables that prompted the *Dothard* Court to find a valid bfoq defense, this court is unable to find that the instant defendants may seize upon the § 2000e–2(e) exception to justify their actions against the plaintiff.

Although the Supreme Court in *Dothard* was cognizant of the tense and threatening ambience of prisons, the Court in no way implied that due to the inherent dangers of prison life *all* positions which entail one-to-one physical involvement with prisoners can be forbidden to women who seek to fill that role. It is not unusual for a volatile atmosphere to exist in a jail at any particular time. Male officers in their respective capacities in the prison administration have, in the past, been held hostage, assaulted, stabbed, etc. These risk-laden duties are not involuntarily imposed on anyone. If a female chooses, as her male counterparts have, to be employed in a dangerous environment not proscribed by the *Dothard* bfoq analysis, such a decision is of her own volition as is any male officer's choice to subject himself to the hazards of the assignment. Except in extraordinary circumstances, such as a riot or fire, the Identifica-tion Assistant Officer's duties would be confined to work between the docket room and the fingerprinting and photographing room. The inmates to which she would be exposed in that area, other than a particular subject being fingerprinted and photographed, would be "trusties," those persons who have been given generally a free run of the jail because they are considered good risks and not likely to attempt escape or commit acts of violence against other persons.

The court notes that the defendant Wimberly, a veteran retired Police Officer from the City Police Department, now Chief Deputy, is not a young man and must walk with the aid of a "walker." It does not seem unreasonable that if there are duties that a physically handicapped person could be assigned during cases of emergency or in the performance of his other duties, there is no reason why the petitioner could not be assigned auxiliary duties in emergencies that would not require physical powers. On such occasions that the Identification Assistant Officer would need to photograph portions of the jail following a disturbance or when fingerprinting and photographing an inmate who was unruly, had a reputation of being unruly, or because of the nature of the charge or otherwise suspected of being unruly, the plaintiff could be assigned some additional protective measures which would represent a good police practice even for a male Identification Assistant Officer. The particular set of circumstances present at the Mobile County Jail does not warrant the finding of a true bfoq defense. The defendant Purvis maintains that if the petitioner was employed as Identification Assistant Officer, he would be compelled to furnish additional security to her from an already over-taxed prison staff because she is a woman. The court is pleased to know that chivalry is not dead. Chivalry is commendable. It adds a dimension to the wonderful relationship that exists because of the natural differences between the sexes. But chivalry should become neither paternalism nor an instrument of employment discrimination against women.

At present, a male officer (all are male) escorts all persons, incoming prisoners and inmates, to be processed by the Identification Assistant Officer to the docket room. After processing by the Identification Officer, the prisoners are escorted from the docket room to their assigned quarters in the jail. The identification process usually takes five to fifteen minutes. There would be no real burdensome staff problem for that same male officer to remain with any persons in custody or prisoners who are perceived as a physical threat to the female identification officer. Under these circumstances, there is no reason why the escorting officer could not accompany the prisoner to the identification room in appropriate situations during that brief interim prior to the return of the prisoner to his assigned place in the jail.

Title VII contains a fairly explicit standard on recoverable damages which still provides the district judge with the necessary flexibility to fashion relief. 42 U.S.C. § 2000e–5(g) states:

> "If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to,  . . . hiring of employees, with or without back pay (payable by the employer  . . . responsible for the unlawful employment practice), or any other equitable relief as the court deems appropriate  . . . . Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable."

With reference to the thrust and importance of this portion of the Title VII statutes, the Supreme Court stated last year:

> "[O]ne of the central purposes of Title VII is 'to make persons whole for injuries suffered on account of unlawful employment discrimination.' [*Albemarle Paper Co. v. Moody*,] 422 U.S. 405, 418, 95 S.Ct. 2362, 45 L.Ed.2d 280. To effectuate this

'make whole' objective, Congress in [42 U.S.C. § 2000e–5(g)] vested broad equitable discretion in federal courts  .  .  .  . . [F]ederal courts are empowered to fashion such relief as the particular circumstances of a case may require to effect restitution, making whole insofar as possible the victims of racial discrimination in hiring."

*Franks v. Bowman Trans. Co.*, 424 U.S. 747, 763–64, 96 S.Ct. 1251, 1264, 47 L.Ed.2d 444, 461 (1976). Echoing this stance the Fifth Circuit has declared that "district courts are afforded wide latitude in fashioning Title VII remedies." *Myers v. Gilman Paper Corp.*, 544 F.2d 837, 851 (5th Cir. 1977).

> "Before the court can grant *any* relief in a Title VII suit, it must find that the defendants engaged in the unlawful employment practice alleged in the complaint [under] 42 U.S.C. § 2000e–5(g)."

*Id.* at 854. This court has found this unlawful sex discrimination to be present in the case *sub judice*. The remedial provisions of Title VII are appropriate.

It is the decision of this court that the plaintiff is (1) to be offered employment as Identification Assistant Officer of the Mobile County Sheriff's Office; and (2) to be awarded back pay, all as detailed below.

"Back pay is the remedy for past wrongs  . . . ." *Id.* If the plaintiff had been rightfully considered for employment by the Sheriff's Office and subsequently had been hired (as were the two men selected) in December of 1975, the plaintiff would have earned a salary of $13,969.00 from January 1, 1976, through November 20, 1977. This figure was reached by applying the existing monthly salary rates over the past twenty-three month period [$600.00 × ten months (January 1976 through October 1976) plus $613.00 × thirteen months (November 1976 through November 1977)].

The mitigation provision of § 2000e–5(g) dictates that any income received by the plaintiff after the wrongful denial of employment must be offset against the salary lost as a result of the discrimination. "[D]amages for the relevant period are to be determined by measuring the difference

**1360**

between plaintiff's actual earnings for the period and those he would have earned absent the discrimination of defendants." *Waters v. Wisconsin Steel Works*, 502 F.2d 1309, 1321 (7th Cir. 1974), *cert. denied*, 425 U.S. 997, 96 S.Ct. 2214, 48 L.Ed.2d 823 (1976). In addition, "[t]he deduction of unemployment compensation [is] proper, being a valid exercise of the trial judge's discretion pursuant to 42 U.S.C. § 2000e–5(g)." *Bowe v. Colgate-Palmolive Co.*, 416 F.2d 711, 721 (7th Cir. 1969). The plaintiff's total earnings including unemployment compensation from January 1, 1976, through November 31, 1977, total $11,321.67. This amount represents the sum of the following sources of income by employer, dates of term of employment, salary scale and approximate total earnings: Gleem Paint Center, January 1, 1976—February 14, 1976, $500.00 per month, $750.00; Unemployment Compensation, February 15, 1976—May 9, 1976, $75.00 to $80.00 per week ($77.50 est.), $930.00; Merchants National Bank, May 10, 1976—August 31, 1976, $475.00 per month, $1,741.67; Merchants National Bank, September 1, 1976—March 31, 1977, $500.00 per month, $3,500.00; Merchants National Bank, April 1, 1977—November 30, 1977, $550.00 per month, $4,400.00.

When the income actually received by the plaintiff over the last two years is subtracted from the income she would have obtained as Identification Assistant Officer had she been hired, the plaintiff is found to be entitled to damages of $2,647.33. The court finds punitive damages are not warranted. The bfoq defense, although inapplicable here, was not frivolous.

It is therefore ORDERED, ADJUDGED and DECREED that the plaintiff have and recover of the defendants, Mobile County, Alabama; Mobile County Sheriff's Department; Thomas J. Purvis in his official capacity of Sheriff of Mobile County, Alabama, and Charles Wimberly, in his official capacity as Chief Deputy Sheriff of Mobile County, $2,647.33.

The plaintiff is to inform the defendants in writing within thirty (30) days of this decree of her decision to take the position of Identification Assistant Officer.

It is further ORDERED, ADJUDGED and DECREED that the defendants Purvis and Wimberly, individually and in their official capacities, their officers, agents, servants, employees and any person in active concert or participation with them, are ENJOINED from failing to employ the plaintiff, Rita Jean Manley, as Identification Assistant Officer in the Sheriff's Office within thirty (30) days after her notification to take the position as set out in the decree.

The plaintiff's claim for attorney's fees is due to be granted. The amount will be determined by a separate and additional order.

All costs to be taxed to the defendants.