**Donald A. RAMIREZ on Behalf of Himself and All Those Similarly Situated, Plaintiff-Appellant,**

v.

**SAN MATEO COUNTY DISTRICT ATTORNEY'S OFFICE et al., Defendants-Appellees.**

**No. 78–3206.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 9, 1980.

Decided Feb. 12, 1981.

**510**

David A. Garcia, San Francisco, Cal., for plaintiff-appellant.

James A. Aiello, Redwood City, Cal., for defendants-appellees.

Before WRIGHT and POOLE, Circuit Judges, and BROWN,* District Judge.

WESLEY E. BROWN, Senior District Judge.

Plaintiff-Appellant Ramirez sought relief under civil rights statutes, 42 U.S.C.A. §§ 1981, 1983, and 2000e, et seq., claiming that defendants refused to hire him as a deputy district attorney for San Mateo County because of his national origin, i. e., Mexican-American, or "Latino," and also in retaliation for complaints which he made concerning discriminatory treatment.

Although the case was brought as a class action, no class was ever certified in this case.

The case was ultimately tried upon the basis of a second amended complaint, filed 11/5/76 (Record 48) and a "Pre-Trial Statement" (Record 257). Prior to jury trial, and upon motion, the trial court dismissed all claims made under Title VII, 42 U.S.C.A. § 2000e et seq. In addition, the court dismissed the § 1981 and § 1983 claims against defendants the Board of Supervisors of San Mateo County, the San Mateo County Civil Service Commission, and the members of the Board and Commission who were individually named. Claims made under 42 U.S.C.A. § 1985 and § 1988 were dismissed as to all defendants. The case was thus tried under § 1981 and § 1983, as to four remaining defendants: Keith Sorenson, District Attorney of San Mateo County, William W. Larsen, his "first" assistant and deputy, the County of San Mateo, and "the Office of the District Attorney of the County of San Mateo." (Record 165)

The copy of the Order of dismissal of the Title VII claim, (Record 165), is a "bare-bones" Order, with no indication of the reason for such dismissal. The parties have, however, assumed and treated the reason as being that the office and position of a deputy district attorney for the county was an exempt position, not covered by the provisions of § 2000e, Title 42.

_____

* The Honorable Wesley E. Brown, Senior United States District Judge for the District of Kansas, sitting by designation.

The § 1981 and § 1983 claims against the four remaining defendants were tried to a jury, which found in favor of all defendants. (Verdict, Record 326).

Judgment was entered in favor of Defendants-Appellees on July 25, 1978. (Record 328)

Plaintiff appeals "from all orders entered in this action, including the final judgment entered on the 25th day of July, 1978." (Record 329)

## ISSUES ON APPEAL

Plaintiff makes two claims of error on this appeal:

1. The district court erred in dismissing the Title VII claim, inasmuch as the San Mateo County District Attorney's Office is subject to the provisions of 42 U.S.C.A. § 2000e et seq.

2. The district court erred in instructing the jury on plaintiff's claim concerning alleged "unlawful retaliation," because of his assertion of civil rights.

## THE TITLE VII CLAIM

Section 2000e–2(a) provides that it shall be an unlawful employment practice for an employer:

> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . .

Section 2000e–3(a) provides that it also shall be an unlawful employment practice for an employer to retaliate against one who opposes unlawful employment practices:

> (a) It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

Under definitions provided by statute, the term "person" includes ". . . governments, governmental agencies, political subdivisions . . ." § 2000e(a), Title 42 U.S.C.A. The term " 'employer' means a person engaged in an industry affecting commerce who has fifteen or more employees . . ." § 2000e(b). However, an exemption is provided through the definition of the term "employee," under § 2000e(f), 42 U.S.C.A.:

> The term 'employee' means an individual employed by an employer, *except that the term 'employee' shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff,* or an appointee on the policy making level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office. The exemption set forth in the preceding sentence shall not include employees subject to the civil service laws of a State government, governmental agency or political subdivision. (Emphasis supplied.)

The Charter of San Mateo County provides in part, in Article VII, § 2: "Every elective county officer shall have plenary power to appoint or remove his or their deputies. . . ." In addition, Article XIV is the article establishing civil service for San Mateo County. Section 4(6) excepts "[p]ositions, offices or employments in the office of the District Attorney which require the possession of a license to practice law." The Supreme Court of California, in one of its recent pronouncements, has reaffirmed the position that charter provisions of counties generally supersede state statutes to the contrary. *Sonoma County Organization of Public Employees v. County of Sonoma,* 23 Cal.3d 296, 152 Cal.Rptr. 903, 591 P.2d 1 (1979), states in part:

> It has long been settled that, insofar as a charter city legislates with regard to municipal affairs, its charter prevails over general state law. However, as to matters of statewide concern, charter

cities remain subject to state law. Similar rules apply to charter counties. (152 Cal.Rptr. at page 914, 591 P.2d at page 12) (Citations omitted.)

The defendants contend, and the plaintiff does not deny, that 1) the Constitution of the State of California provides that a county may become a charter county; 2) San Mateo County is a charter county under Article XI of the Constitution of the State of California; 3) the charter provides that the district attorney is an elected official with plenary power to appoint and dismiss all deputies; 4) deputy district attorneys serve at the will and pleasure of the district attorney; and 5) San Mateo Deputy District Attorneys are not a part of the County Civil Service.

The six cases discussed by both plaintiff and defendants in connection with whether or not the position of deputy district attorney is covered by Title VII include *Wall v. Coleman*, 393 F.Supp. 826 (S.D.Ga.1975), a case exactly in point. In *Wall*, a licensed female attorney brought suit under § 2000e alleging sexual discrimination in the denial of employment as an assistant county district attorney. The Georgia district attorney was an elected public official. The court discussed the legislative history of the exemption provided by § 2000e(f), finding that it was clear that Congress intended to exempt elected officials and members of their personal staffs, and persons appointed by elected officials as advisors or to policy-making positions. The court also considered dictionary definitions of the term "staff," and ultimately concluded that the position was exempt under § 2000e(f):

> It is thus the court's considered judgment that giving the statutory language the narrowest possible construction, an assistant district attorney is a member of the personal staff of this publicly elected defendant district attorney and as such is not a position of employment subject to the 1964 Civil Rights Act, 42 U.S.C. § 2000e et seq. (393 F.Supp. 826 at 831).

In *Kyles v. Calcasieu Parish Sheriff's Department*, 395 F.Supp. 1307 (W.D.La.1975), the court considered the relationship between a sheriff and a deputy sheriff under Louisiana law, where the sheriff was an elected official with power to appoint as many deputies as necessary, each of whom could perform any of the duties of the sheriff, subject to his direction and supervision. The court found that the plaintiff deputy was not an "employee" of the sheriff's office—ruling that the relationship was much more personal; "it is an appointor-appointee relationship," without contractual rights, and not subject to civil service protection.

A third case, not particularly in point, is *Delgado v. McTighe*, 442 F.Supp. 725 (E.D. Pa.1977), which involved a class action by black and Puerto Rican law school graduates against the State Board of Law Examiners and its individual members. The court pointed out the obvious fact that there was no "employment" relationship between the Board and applicants for admission to the Bar which would bring such applicants within the protection of Title VII, prohibiting discrimination in "employment."

Both *Manley v. Mobile County*, 441 F.Supp. 1351 (S.D.Ala.1977) and *Howard v. Ward County*, 418 F.Supp. 494 (D.N.D. 1976), involved deputy sheriff positions. In *Manley*, a female applicant for a position as an "identification assistant officer" in the sheriff's office successfully contended she was within the protection of 42 U.S.C. § 2000e. There was no discussion of the exemption provisions of § 2000e(f) in this case.

In the *Howard* case, supra, a female county deputy sheriff brought a Title VII and Equal Pay Act claim against the county for discrimination with respect to compensation. The court discussed the exemption problems under § 2000e(f) at length, at pp. 501–503 of 418 F.Supp. and considered the legislative history of that section. It was noted that under North Dakota law, the sheriff was an elected official, and that plaintiff employee was not protected by state civil service laws, although that "fact alone does not bring her within the exclusion of 42 U.S.C. § 2000e(f)." It was also

noted that under local law, the Board of County Commissioners, and not the sheriff, determined the number of deputies to be appointed, and that under North Dakota law, a deputy sheriff is an employee of the state or county, and not of the sheriff. Under these facts, it was found that the plaintiff deputy was not a member of the sheriff's "personal staff," and so did not come within the exclusion of § 2000e(f).

In *Gearhart v. State of Oregon*, 410 F.Supp. 597 (D.Ore.1976), the position in question was that of a deputy legislative counsel, the duties of which involved the drafting of bills and research assistance for the state legislature. Plaintiff, a woman, worked under a legislative counsel who served as the executive officer of the Legislative Counsel Committee created by the legislature. Members of the counsel's staff were exempt *from* civil service coverage under state law. Counsel and his staff were forbidden by law to "oppose, urge or attempt to influence legislation." Here, plaintiff was *not* an elected official, nor a person chosen by such official as a personal staff member. The question became whether or not plaintiff was "an immediate adviser with respect to the exercise of the constitutional or legal powers of the office," the office being that of state legislator. The court held that plaintiff was *not* such an immediate adviser, distinguishing the case of *Wall v. Coleman*, supra, 393 F.Supp. 826 in this language at p. 601 of 410 F.Supp.:

> It is obvious that the relationship between a district attorney and a deputy on his staff is considerably different from that of a legislator and a deputy legislative counsel such as plaintiff.

The California case relied upon by plaintiff, *Price v. Civil Service Commission of Sacramento County*, 26 Cal.3d 257, 604 P.2d 1365, 161 Cal.Rptr. 475 (1980), does not support appellant's argument. Though applying Title VII to district attorneys in Sacramento, there was no discussion of the personal staff exemption. Because the attorneys were subject to the civil service system, the exemption does not apply under the language of the Act.

We believe that *Wall v. Coleman*, supra, correctly analyzes the personal staff exception of § 2000e(f). Critical to the court's analysis there was the distinctive character of the office of deputy district attorney as comprehended by Georgia law:

> [T]he assistants appointed by District Attorney Ryan do what he delegates to them, serve at his pleasure and work as his assistants instead of working as assistants for all district attorneys of this state . . . (393 F.Supp. at 831)

■ A similar distinctiveness characterizes the position of deputy district attorney in San Mateo County. Unlike most other county workers, deputy district attorneys serve at the pleasure of their superior, the district attorney, who has plenary power of appointment and removal. Also unlike others employed by the county, deputies are not subject to the normal protections of the county civil service system.

This characterization of the deputy's position in county law tells us much about the working relationship the county envisions between district attorney and deputy. The exclusive powers of selection and retention indicate that deputies perform to the district attorney's personal satisfaction rather than to the more generalized standards applied to other county workers by the civil service system. Such a level of personal accountability is consistent with the highly sensitive and confidential nature of the work which deputies perform as well as with the considerable powers of the deputy to represent the district attorney in legal proceedings and in the eyes of the public. See *Wall v. Coleman*, supra, 393 F.Supp. at 830–31. We conclude that when a job includes this level of personal accountability to one elected official, it is precisely the sort of job Congress envisioned to be within the "personal staff" of that official and thus exempt from Title VII.

The district court did not err in dismissing plaintiff's Title VII claim.

## THE "RETALIATION" INSTRUCTIONS

Plaintiff claims that defendants retaliated against him because he sought to enforce

his civil rights and that the district court failed to properly instruct the jury on this issue.

It is difficult to follow plaintiff's logic in claiming error in the court's instructions regarding "retaliation," when he urges that the court "quite probably misstated the standard for constitutional violations ...," meanwhile urging that "it is clear that the Title VII standard is different [from the constitutional standard]." (Appellant's Brief, p. 16).

It should first be noted, of course, that all Title VII claims were dismissed from the case on January 5, 1978, (Record 165), more than six months prior to trial. The Title VII provision making "retaliation" an unlawful employment practice, § 2000e–3(a), was no longer an issue, and the case was tried upon plaintiff's claims under 42 U.S. C.A. §§ 1981 and 1983:

§ 1981. Equal rights under the law.

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

§ 1983. Civil action for deprivation of rights.

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. * * *

The court's instructions on the elements of both these claims appear in the Appendix of this opinion.

An examination of the instructions offered, and the instructions given, reveals that although the parties talked in terms of "illegal retaliation," the question of plaintiff's right to make complaint about alleged unfair treatment, was properly handled as a First Amendment right to free speech. See copies of certain instructions given by the court, attached as an Appendix to this Memorandum. In particular, the revised draft of defendant's proposed instruction # 49, which appears at Record 305, bears the notation that this instruction was based upon *Sprague v. Fitzpatrick*, 546 F.2d 560 (3rd Cir. 1976), cert. den. 431 U.S. 937, 97 S.Ct. 2649, 53 L.Ed.2d 255 (1977); *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); *Kannisto v. City and County of San Francisco*, 541 F.2d 841 (9th Cir. 1976), cert. den. 430 U.S. 931, 97 S.Ct. 1552, 51 L.Ed.2d 775 (1977); and *Phillips v. Adult Probation Dept.*, 491 F.2d 951 (9th Cir. 1974).

All of these cases were First Amendment cases involving the question of protected speech. In *Sprague*, it was held that a district attorney could discharge his first assistant who criticized him in public, thus destroying any working relationship that they might have had. In *Kannisto*, the 9th Circuit, Eugene A. Wright, Circuit Judge, held that plaintiff, a lieutenant in the San Francisco Police Department, was subject to discipline for disrespectful and disparaging remarks made about a superior officer while addressing subordinates. The case of *Pickering v. Board of Education*, supra, was distinguished. In *Pickering* a teacher was discharged for sending a letter to a local newspaper which contained criticism of school board policies. The United States Supreme Court found this to be protected activity, noting that statements in the letter were not directed toward any person with whom the teacher would normally be in contact so as to cause any disruptive influence on the teacher's daily work. In *Kannisto*, Judge Wright noted that the officer's critical comments were directed against his supervisor, and that such criticism could be expected to have substantial disruptive influence within the police de-

partment. In *Phillips*, a deputy probation officer was suspended for placing an offensive poster on his office wall. The poster brought complaints and heated objections from his co-workers. The 9th Circuit held that the government, in the interest of maintaining highly efficient services, could properly require public employees "to suspend or refrain from certain activities . . ." which others might exercise more freely.

The argument is made by defendants that plaintiff has waived any issue regarding instructions through his failure to object to the instructions when given by the Court, as required by Rule 51, F.R.Civ.P., and *Investment Service Co. v. Allied Equities Corp.*, 519 F.2d 508 (9th Cir. 1975). Defendants contend that appellant failed to object to the district court's Instruction # 2 defining the § 1983 claim, and that none of the cases urged by plaintiff involved a "retaliation" claim under § 1983. We have found no error in the court's instructions, and thus need not discuss this contention.

## SUMMARY

We hold that the district court properly ruled that the position of assistant district attorney was that of a member of the "personal staff" of an elected official, that such position was not a civil service position, and thus as a matter of law plaintiff has no claim under the provisions of Title VII.

Regardless of whether or not plaintiff preserved his objections to the court's instructions, the question of "retaliation" was properly submitted to the jury as a First Amendment claim, subject to limitations upon exercise of this right properly imposed upon public employees under rules of the 9th Circuit set out in *Kannisto v. City and County of San Francisco*, 541 F.2d 841, supra, and *Phillips v. Adult Probation Dept.*, 419 F.2d 951, supra. The court's instructions on "retaliation" appear in the Appendix, p. iii.

The Judgment of the district court is AFFIRMED.

## APPENDIX

### COURT'S INSTRUCTIONS

*Court's Instruction No. 1*—(Record 307)

The plaintiff's claim under 42 U.S.C. § 1981 has three essential elements, as follows:

First, that he applied for employment with the District Attorney's Office;

Second, that he was refused such employment; and

Third, that the effective reason for defendants' refusal was the national origin of plaintiff.

(Replaces: D's # 40, in part, and P's # 45(a)–(c))

------------------------------------

*Court's Instruction No. 2*—(Record 308)

(largely follows part 2 of D's # 40)

As to plaintiff's claims under 42 U.S.C. § 1983:

1. That when defendant Larsen and defendant Sorenson were considering plaintiff's application for a position in the criminal division of the District Attorney's Office from and after July 18, 1975, they, and each of them, were acting under color of some law of the State or charter provision, county ordinance, or regulation;

2. That defendant Larsen and defendant Sorenson knowingly discriminated against plaintiff because of his exercise of his constitutional rights.

3. That the conduct of defendant Larsen and defendant Sorenson deprived the plaintiff of his Federal constitutional rights, as elsewhere explained in these instructions.

4. That the acts and conduct of defendant Larsen and defendant Sorenson were the proximate cause of consequent damage to the plaintiff.

------------------------------------

*Plaintiff's Requested Instruction No. 41a* —(Record 194)

Even though a person has no 'right' to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there

**516**

are some reasons upon which the government may not act. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially, his interest in freedom of speech. For if the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized and inhibited. Such interference with constitutional rights is impermissible.

\* \* \* \* \* \*

As Modified and Given by the Court— (Record 306)

Even though a person has no 'right' to a valuable governmental benefit and even though such a benefit may be denied for any number of reasons, there are some reasons which are impermissible. In general, a benefit may not be denied to a person on a basis that infringes his constitutionally protected interests—especially, his interest in freedom of speech.

*Instruction Given by Court*—Revised Deft. # 49—(Record 305)

If you find that the relationship that exists between the district attorney and his deputies would be seriously and injuriously affected by the making of publicly embarrassing statements against defendant Sorenson you are instructed that a decision not to employ plaintiff based upon said statements does not constitute an illegal retaliation.

(Authority: *Sprague v. Fitzpatrick*, 546 F.2d 560 (3rd Cir. 1976), cert. denied 431 U.S. 937, 97 S.Ct. 2649, 53 L.Ed.2d 255; See *Pickering v. Board of Educ.*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); *Kannisto v. City & County of S.F.*, 541 F.2d 841 (9th Cir. 1976); *Phillips v. Adult Probation Dept.*, 491 F.2d 951 (9th Cir. 1974).)

Defendants' Proposed Instruction No. 41— (Record 228)

Given by the Court—(Record 285)

'Illegal Retaliation'—Defined

You are instructed that an illegal retaliation, as used in these instructions, means depriving a person of a property right because of that person's prior acts or conduct, which prior acts or conduct consisted of constitutionally protected activity.